## MARY ANN NALLEY vs. THE HARTFORD CARPET COMPANY.

Where an injury is claimed to have been caused by the negligence of the defendant in not providing proper safeguards at some place of danger for which he was responsible, evidence of safeguards placed there by him after the accident is not admissible for the purpose of showing his prior negligence.

The rule that if evidence was admissible for any purpose a new trial will not be granted for admitting it, applies only where it does not appear that the evidence was received for an illegitimate purpose.

[Argued January 8th—decided January 25th, 1884.]

ACTION for an injury from the negligence of the defendants; brought to the Superior Court in Hartford County, and tried to the jury before *Andrews, J.*

Upon the trial the plaintiff introduced evidence to prove, and claimed that she had proved, that the defendants, the owners of the building in which she was employed as a factory operative, had neglected to sufficiently fasten a door leading into a closet; and that in consequence of such neglect she had fallen into a vault in the closet and received the injury complained of. The defendants introduced evidence to prove, and claimed that they had proved, that the door was securely fastened by means of an iron strap hinge screwed with two large screws into the door of the closet, and a like number of screws into the jamb of the door, and that they were guilty of no negligence in respect thereto, and that the fastening remained intact until the plaintiff forcibly and by her own negligence broke through the door and thus fell into the vault.

Upon the cross-examination of John Naylor, a witness for the defense, who had testified in his direct examination relative to the manner of the fastening, and the time when he had last, before the accident, seen the hinge on the door, the counsel for the plaintiff made the following inquiry: "The day after the accident do you recollect there being some boards nailed across the casing of the door in front to

stop the people from going in there?" To this question the defendants objected, upon the ground that the precautions taken after the accident did not show nor tend to show the nature or insufficiency of the precautions taken before, and were not admissions by the defendants that such previous precautions were insufficient. The court overruled the objection and admitted the question. The defendants excepted. To the question the witness answered: "I think there were some boards nailed across on Tuesday." To this answer a like objection was made by the defendants, and the answer was admitted, and the defendants excepted.

The defendants' counsel in the argument of the cause requested the court to charge the jury that the fact that the defendants nailed boards across the door of the privy after the accident, or took any other precautions after the accident, were not competent evidence to show the nature or insufficiency of the precautions taken before, and were not admissions nor in the nature of admissions by the defendants of negligence in respect to such previous precautions. The court refused so to charge.

The jury returned a verdict for the plaintiff, and the defendants appealed on the ground of error in the above ruling of the court and in the refusal to charge as requested.

*R. D. Hubbard* and *C. H. Briscoe,* for the appellants, cited—*Dougan* v. *Champlain Transportation Co.,* 56 N. York, 1, 8; *Baird* v. *Daly,* 68 id., 551; *Salters* v. *Delaware & Hudson Canal Co.,* 3 Hun, 338; *King* v. *N. York Central R. R. Co.,* 4 id., 776; *Payne* v. *Troy & Boston R. R. Co.,* 9 id., 526; *Sewell* v. *City of Cohoes,* 11 id., 626, 630; *Morrell* v. *Peck,* 24 id., 37; *Morse* v. *Minneapolis & St. Louis R. R. Co.,* 30 Minn., 465.

*L. E. Stanton* and *J. H. Halliday,* with whom was *C. E. Perkins,* cited—*Readman* v. *Conway,* 126 Mass., 374; *Sewell* v. *City of Cohoes,* 75 N. York, 45; *Folsom* v. *Town of Underhill,* 36 Verm., 511; *Manderschid* v. *City of Dubuque,*

29 Iowa, 73, 82; *Pennsylvania R. R. Co.* v. *Henderson*, 51 Penn. St., 318; *West Chester & Phil. R. R. Co.* v. *McElwee*, 67 id., 311; *McKee* v. *Bidwell*, 74 id., 218.

LOOMIS, J.　The main issue of fact in this case was whether the defendant was guilty of negligence in not properly fastening a door in one of its mills opening into a water closet, after the floor had been removed for repairs, by reason of which the plaintiff, opening the door, stepped in and fell to the ground and was injured.

The defendant offered evidence to prove that the door had been securely fastened by strap hinges screwed into both the door and the jamb, so that it could not be opened without violence, and that the plaintiff broke it down after great effort, and so received her injury. The counsel for the plaintiff, in the cross-examination of one of the defendant's witnesses, inquired if boards were not nailed across the casing of the door on the day following the accident to stop people from going there. To this question the defendant objected, on the ground that the precautions taken after the accident did not show the nature or insufficiency of the precautions taken before, and were not admissions by the defendant that such previous precautions were insufficient. The court however admitted the evidence. In the argument the defendant's counsel again called the attention of the court to this question, and requested the court to instruct the jury that the testimony was not admissible for the purposes mentioned in the objection, but the court did not so instruct the jury.

It will be readily conceded that the negligence to be proved depended entirely upon what the defendant knew and did or omitted to do before the accident. The only possible bearing which the evidence in question could have would be as an admission that the previous precautions were insufficient and negligent. And this presents the question for our present discussion—Can this act subsequent to the accident be made to reflect back and condemn what

the defendant had done by way of securing this door before the accident?

The question obviously has an importance which transcends the exigencies of the present case, for all persons to whose negligence accidents may be attributed will want to know how much in the way of changes and repairs they may afterwards do, to prevent the possibility of a recurrence of similar accidents, without admitting their responsibility for the past.

We are not aware that the question has ever been the subject of discussion in this court. We are entirely free therefore to adopt the rule which seems best founded in reason, justice and public policy. But we will first endeavor to obtain what assistance we may by a review of the authorities from other states.

And here we shall find some contrariety of decision and reasoning, but we think there is a decided preponderance of authority in favor of the defendant's claim, that precautions taken subsequent to an accident do not involve an admission that the prior ones were insufficient and negligent. A long line of consistent decisions in the state of New York sustains the defendant's objection to this evidence. In *Dougan* v. *Transportation Co.*, 56 N. York, 1, it was claimed that the defendant was guilty of negligence in not sufficiently protecting by a railing a gangway on the defendant's boat, in consequence of which the plaintiff's intestate slipped under the railing in attempting to recover his hat which had suddenly blown off, and fell overboard and was drowned. The plaintiff offered to prove that after the accident the defendant boarded up the space under the railing. The Court of Appeals held that this evidence was properly rejected, upon the ground that the question of negligence was to be determined by what was known before and at the time of the accident. In *Saltus* v. *Del. & Hud. Canal Co.*, 3 Hun, 338, the plaintiff's intestate was killed while employed as a fireman on a locomotive of the defendant which ran into an open frame switch and was overturned. It was claimed that the defendant should have used at the

place a target switch, and the court below permitted the plaintiff to give evidence to the effect that after the accident the defendant substituted a target switch for the common one, which was held to be error within the ruling in *Dougan* v. *Transportation Co.*, (*supra*,) the court saying that "what the defendants did after the injury was immaterial, unless their acts could be construed as equivalent to their declaration that they were negligent at the time of the injury." The same principle was applied in *King* v. *Railroad Co.*, 4 Hun, 776, where after the accident repairs and changes were made in a derrick which caused the injury. In *Baird* v. *Daly*, 68 N. York, 551, the Court of Appeals held that it was error in an action for negligence against the owner of a steam tug for towing a scow at an improper rate of speed, to show that the scow was towed at less speed after the accident than before. In *Payne* v. *Railroad Co.*, 9 Hun, 526, in an action to recover damages for an injury to the plaintiff's husband, received while passing over a crossing upon defendant's track, the plaintiff was allowed against the defendant's objection to show that shortly after the accident the defendant took up the planks at the crossing and replaced them by new ones; which was held to be error, upon the ground, as stated by LARNED, P. J., that it would be plainly unjust to the defendants that they should not take additional precautions against accidents without the risks that these precautions should be construed into an admission of prior negligence. See also *Sewell* v. *City of Cohoes*, 11 Hun, 630, and *Morrell* v. *Peck*, 24 id., 37.

In *Hudson* v. *Railroad Co.*, 59 Iowa, 581, and in *Cramer* v. *City of Burlington*, 45 Iowa, 627, it was distinctly held that repairing defects after an accident was not evidence as an admission of negligence at the time of the accident. But although these decisions are the same in principle as those cited from New York, yet they seem to be placed entirely upon the narrow ground that the acts in question, having been done by agents of the defendant corporations, were not binding on the latter, because not contemporaneous with the injury complained of. But the same court in *Couch* v.

*Watson Coal Co.*, 46 Iowa, 17, where the alleged cause of the injury was the incompetency and carelessness of an engineer employed by the defendant, held that the fact that after the accident the engineer had been discharged by the defendant, was not admissible as tending to show that he was incompetent or careless. There was no question here as to the authority of an agent to bind the defendant. The act of discharging the engineer was conceded to be the act of the defendant. So that, in so far as the case is similar in principle to changes and repairs in a structure causing an injury, it is an authority in favor of the defendant. The court put the case on the ground that the discharge did not involve an admission that the engineer was incompetent, as he may have been discharged for a variety of reasons. The analogy of the reasoning to the case at bar would seem to be perfect. The subsequent change and precaution here may also be attributed to a variety of reasons other than the one involving an admission that the previous precautions were in fault.

The only decisions, not now overruled, which we have been able to find to support the claim of the plaintiff as to the evidence in question, are from the courts of Pennsylvania. The first case is that of *Penn. R. R. Co.* v. *Henderson,* 51 Penn. St., 315, where the injury (which was the killing of the plaintiff's husband) was alleged to have been caused by the negligence of the railroad company in not having a safe and convenient platform, and not allowing sufficient time to get into the cars, and in causing an engine to run alongside of the cars when passengers were about to get into them. Among other points it was claimed that there was error in permitting the plaintiff to show that the agent of the company, on the morning after Henderson was killed, directed the telegraph operator to telegraph Thomas A. Scott, general superintendent of the road, the situation of the platform, and that he thought it ought to be removed, and that the reply came immediately, "Very well," and that the platform was removed the next day. It was held that there was no error in this ruling, but no reasons

at all are given, as the point was not a prominent one in the case. It may perhaps be reconciled with the principle of the New York decisions by the fact that the act of removing the platform was characterized by the strong language which the agent used condemnatory of it and the arrangements, which was adopted virtually by the general agent, and that the act was equivalent to saying that the platform ought to have been removed before, or ought never to have been built in the way it was. If so construed it was of course proper evidence. This decision however was followed by two others, where there were no declarations accompanying the act to make it refer back and condemn the previous arrangements, and which it must be conceded cannot well be reconciled with the New York authorities. In *West Chester & Philadelphia R. R. Co.* v. *McElwee*, 67 Penn. St., 311, which was an action for death by negligence from cars striking a cart on scales near to a railroad track, it was held that evidence was proper, that after the accident the track was removed to a greater distance. The only reasons given are these by WILLIAMS, J.: "If the evidence tended to show, as suggested, that the track was originally too near the office and shanty to permit the cars to be run on it without danger, then it was evidence of a fact proper for the consideration of the jury in determining whether due and reasonable care had been used by the company to avoid the accident. If the proximity of the track to the buildings did not increase the danger, why was it moved? And if it did, then a higher degree of care was necessary to avoid accident, and in this aspect the evidence was properly received." In *McKee* v. *Bidwell*, 74 Penn. St., 218, the plaintiff in going about nightfall into the defendant's building on business, fell through an opening into the cellar. It was held that evidence that the defendant afterwards put a light at the opening was admissible.

The Supreme Court of Minnesota, at first following the Pennsylvania decisions, held in several cases, (*O'Leary* v. *City of Mankato*, 21 Minn., 65, *Phelps* v. *City of Mankato*, 23 Minn., 276, and *Kelly* v. *Railroad Co.*, 28 Minn., 98,)

that repairs after an accident of a structure the defects of which were the alleged cause of the injury, were evidence tending to show the previous unsafe condition of the thing repaired, provided the repairs or changes were made so soon after the accident and under such circumstances as to indicate that they were suggested by it and were done to remedy the defect which caused it; but on the question coming up again in *Morse* v. *Railroad Co.*, 30 Minn., 465, decided as recently as June, 1883, the court, alluding to its previous decisions, said: "But on mature reflection we have concluded that evidence of this kind ought not to be admitted under any circumstances, and that the rule heretofore adopted by this court is on principle wrong; not for the reason given by some courts, that the acts of the employees in making such repairs are not admissible against their principals, but upon the broader ground that such acts afford no legitimate basis for construing such an act as an admission of previous neglect of duty. A person may have exercised all the care which the law required, and yet, in the light of his new experience, after an unexpected accident has occurred, and as a measure of extreme caution, he may adopt additional safeguards. The more careful a person is, the more regard he has for the lives of others, the more likely he would be to do so, and it would seem unjust that he could not do so without being liable to have such acts construed as an admission of prior negligence. We think such a rule puts an unfair interpretation upon human conduct, and virtually holds out an inducement for continued negligence."

We may well adopt this reasoning of the Minnesota court as covering the entire ground in a few words. Courts that have taken a different view of this question seem to us to have overlooked the changed conditions under which the acts subsequent to the accident have been done. The fact that an accident has happened and some person has been injured, immediately puts a party on a higher plane of diligence and duty from which he acts with a view of preventing the possibility of a similar accident, which should

operate to commend rather than condemn the person so
acting.  If the subsequent act is made to reflect back upon
the prior one, although it is done upon the theory that it is
a mere admission, yet it virtually introduces into the trans-
action a new element and test of negligence which has no
business there, not being in existence at the time.

In the case at bar it is perfectly clear that the act of nail-
ing boards across the door should not be admitted to show
previous negligence, even if the rule should not go to the
extent that it has been applied in the state of New York.
It was conceded that the door to the closet was intended to
be closed by the defendant, the only question being whether
it was properly done.  By the act of the plaintiff, whether
it was extraordinary or otherwise, the door was broken
down, and after the accident there was nothing to prevent
persons from passing through the door; the defendant
therefore, in view of this new danger, immediately nailed
boards across.  If a bridge should be broken down by a
heavy load, though the fault was in the load rather than
the bridge, no court would think of its being evidence of
prior negligence if the party bound to keep it in repair
should put a bar across to stop travel or should rebuild the
bridge.  The new condition calls for the new act; and so
it manifestly did in the case under consideration.

But the plaintiff claims that the subsequent boarding up
the door was at least admissible to show that certain of the
defendant's witnesses who had testified to the marks of vio-
lence seen on and about the door after the accident, could
not have seen what they described, and she invokes the
benefit of the familiar rule, that if evidence is admissible
for any purpose its reception furnishes no ground for a new
trial; but this rule applies only where it does not appear
that the evidence was received for an illegitimate purpose.
*Tyler* v. *Todd*, 36 Conn., 220.

In this case it is very clear that the evidence was received
for an illegitimate purpose.  The objection to it was specific,
that it was not admissible to show prior negligence.  The

plaintiff, while claiming the testimony, did not in any manner disclaim the purpose attributed, and the court afterwards being asked to limit the scope and effect of the evidence by excluding the purpose named, refused to do so. It is quite certain therefore that the jury must have used the evidence for an improper purpose to the injury of the defendant.

There was error in the rulings complained of, and a new trial is ordered.

In this opinion the other judges concurred; PARDEE, J., being disqualified by interest and not sitting.