# Georgia Pacific Railway Co. *v.* Propst.

*Action by Minor, for Damages on account of Personal Injuries.*

1. *Who may sue for personal injuries to minor.*—The act approved January 23d, 1885, giving a right of action to the father for personal injuries to a minor child, and providing that but one suit shall be maintained for such injuries (Sess. Acts 1884-5, p. 99), does not take away the infant's right of action, in the event the father fails to sue.

2. *Amendment of summons and complaint by correcting name.*—In an action against a railroad company, the summons and complaint may be amended (Code, § 3156) by substituting the word rail*way* for rail*road* as a part of the defendant's corporate name.

3. *Conductor's authority to employ brakeman temporarily.*—When one of the brakemen on a freight train becomes ill, and unable to perform his duties, the conductor of the train has, of necessity, implied authority to employ another person to act as brakeman for the time being.

4. *Liability of principal (railroad company) for acts of agent.*—A railroad company is liable, as principal, for injuries received by a person who was employed by the conductor of a freight train as a brakeman during the trip, while acting under the orders of the conductor in coupling cars; but not if the person so acting and injured was only a passenger, who was not employed by the conductor, nor under any obligation to obey his orders.

5. *Duty of railroad company in matter of machinery used.*—It is the duty of a railroad corporation, as of all persons employing servants, not to expose its employees to needless peril by using unfit or defective machinery, but to keep reasonably abreast with improved methods by which danger may be lessened; yet it is not required to adopt every new invention or appliance useful in its business, but may continue the

[Georgia Pacific Railway Co. v. Propst.]

use of such machinery and appliances as are ordinarily used by well conducted roads under like circumstances.

6. *What witness may state; opinion of expert.*—A witness, having the necessary knowledge, may testify to the general rules and practice of railroads in coupling cars, and may give his opinion as to the comparative safety or danger of the different methods; but he can not, even when competent to testify as an expert, state that the particular method or machinery of another railroad is better or safer than the defendant's.

7. *Contributory negligence.*—If the plaintiff, while in the service of the railroad company as brakeman, knew that a rule of the company required the use of a stick in coupling cars, and forbade the use of the hand, and, in violation of this rule, went between the cars, and attempted to use his hands, whereby he was injured, he would be guilty of contributory negligence; but, if there is also evidence tending to show that he had no knowledge of such rule, and had seen coupling done in both ways, the question of contributory negligence *vel non* is for the jury.

APPEAL from the Circuit Court of Fayette.

Tried before the Hon. S. H. SPROTT.

This action was brought by William H. Propst, a minor, suing by his father as next friend, against the appellant corporation, to recover damages for personal injuries sustained while engaged in its service as brakeman; and was commenced on the 31st December, 1886. The original summons and complaint described the defendant as the Georgia Pacific *Railroad* Company; but, a plea in abatement being filed, alleging a misnomer, the court allowed an amendment by substituting *Railway* for *Railroad;* to the allowance of which amendment the defendant excepted.

The first count of the complaint, as amended, alleged that it was the duty of the defendant, being engaged in running trains on its road for transporting freight and passengers, to have good works, machinery and appliances in connection with its business, and to keep them in good repair, and to have them used and run with care and prudence; that plaintiff was in the defendant's employment as night watchman, and was required, in connection with other duties, to watch and guard defendant's trains by night: that on the 27th January, 1886, while in said employment, he was directed and instructed by a conductor, who was then and there in the employment of the defendant, "and who had a superintendence intrusted to him by the defendant, and in the exercise of such superintendence, to act in the capacity of a brakeman; which said instructions and directions plaintiff obeyed, and while acting as such brakeman, under such instructions, on a trip down said road, after reaching Berry Station in Fayette county, plaintiff undertook to couple a car to said train, being

ordered by the said conductor; and while attempting to secure and make fast said coupling, the drawheads attached to said cars were driven in, and plaintiff's arm was caught between the bumpers of two cars, which bruised, crushed," &c.; "and plaintiff avers that the wrongs and injuries aforesaid were suffered by reason of defective works, machinery or plans, connected with, or used in defendant's said business, *to-wit, the coupling and appliances used for connecting said cars,* and which, for the want of proper care and diligence, would have been, and ought to have been known to the defendant, and all of which were unknown to plaintiff." The italicized words were added to this count by amendment, after demurrer sustained to the original; and the court then held the count sufficient.

The second count of the original complaint, after stating plaintiff's employment as night watchman, and the defendant's duty to have a sufficient number of employees to conduct its trains and business, further alleged that, on said 27th January, 1886, one of the defendant's conductors on a freight train, "who had charge or control of a freight train on defendant's road, and was delegated with authority from defendant to give instructions in its behalf, directed and instructed plaintiff to quit or leave his employment as watchman, and to serve in the capacity of a brakeman on said train, on account of defendant's failure to have a sufficient number of brakemen to operate and manage said train;" that plaintiff acted as brakeman on the trip down, in obedience to the instructions of the conductor, and was injured while attempting to couple a car to the train, in obedience to the orders of the conductor; and that his injuries were caused by "the defendant's failure to have on said train a sufficient number of brakemen and servants to manage said train." A third count in the original complaint alleged that the conductor was intrusted by the defendant with a general superintendence, that the plaintiff was bound to obey the orders of the conductor, and was injured while attempting to obey his orders; and that the injuries were caused by the negligence of the conductor. A demurrer was sustained to each of these counts, and the record does not show that they were ever amended.

A fourth count was added to the complaint by amendment, which alleged, in substance, that on the 27th January, 1886, "while plaintiff was in said employment as night watchman, a conductor, who was then and there under a common master,

and had superintendence, ordered and directed plaintiff to act in the capacity of brakeman on a freight train down said road, which said order and instructions plaintiff obeyed;" and after reaching Berry Station in said county, "plaintiff undertook, after being ordered by said conductor, to couple a car to said freight train," and was injured in the attempt. The defendant demurred to this count, because it showed that the plaintiff, at the time he was injured, was not in the discharge of any duties or service he owed to the defendant, and that he voluntarily contributed to his own injuries; which demurrer the court overruled.

The defendant pleaded not guilty, and contributory negligence; and the cause was tried on issue joined on these pleas. On the trial, as appears from the bill of exceptions, the plaintiff testified as a witness for himself, stating his employment as watchman by the defendant, and the circumstances connected with the accident by which he was injured, substantially as alleged in the complaint. He further testified, on cross-examination, that he was under twenty-one years of age at the commencement of the suit, and that the action was instituted for him by his father. The defendant thereupon moved to dismiss the suit, on the ground that there was no law authorizing it; and duly excepted to the overruling of the motion. One Suddeth, a witness for plaintiff, "stated, that he had a little experience in working for the defendant as brakeman in 1885-6; and that a diagram exhibited to him, purporting to show the couplings, drawheads, bumpers, &c., of the defendant's cars, and also those of the M. & O. Railroad Company, was a correct representation of said couplings,—the double deadwoods by the defendant, and the single ones by the M. & O. Railroad Company. Witness was then asked, whether the coupling of defendant's cars was attended with more danger than the couplings used by the M. & O. Railroad Company, and answered that it was." The defendant objected to this question and answer, and excepted to the overruling of his objections. There were other exceptions to rulings on evidence, which it is unnecessary to state.

The court gave the following charges on request of the plaintiff, exceptions to each being reserved by the defendant:

"(2.) That the physical pain and suffering ought not to be taken into the account in estimating the damages, in any action to recover damages for a personal injury occasioned by negligence, irrespective of any question or motive whatever."

[Georgia Pacific Railway Co. v. Propst.]

"(3.) The master is bound to use ordinary care—such care as men of ordinary prudence exercise under like circumstances, for their own protection—in the selection of careful and skillful servants, and in furnishing safe and fit materials and appliances, or machinery necessary and proper for the service; and for injuries arising from a breach of this duty, in either particular, he is liable to a servant."

"(4.) If the jury believe from the evidence that the defendant's machinery, when plaintiff received the injury, was dangerous and unsafe, either in the matter of its construction, or in the materials of which it was composed, and the defendant knew, or might by due care have ascertained the fact; then the defendant is liable for resulting injuries, unless they further believe that plaintiff knew said machinery was dangerous and unsafe."

"(5.) Corporations can only act through their agents; and when they delegate power to an agent, and he executes that power, it is the act of the corporation."

"(6.) While the master is not bound to supply the servant with the most approved and the safest appliances and instrumentalities as are safe and fit for the business, not exposing the servant to greater perils than are usually incident to the service—?"

"(7.) If the jury believe from the evidence that the defendant placed Waring (the conductor) in charge or control of an engine or train on any part of defendant's road, and while in charge or control of said engine or train Waring directed plaintiff to couple a car attached to a locomotive, which act of coupling cars was not within the scope of plaintiff's employment, and which exposed him to greater hazards and dangers than were contemplated in the contract of service; the said orders given by Waring (conductor) must be regarded in law as the orders and negligence of the defendant, and if plaintiff, by reason thereof, sustained a permanent injury, the defendant would be liable in this action."

The several rulings on the pleadings and evidence, the charges given, and other matters, are here assigned as error.

McGUIRE & COLLIER, and JAMES WEATHERLY, for appellant. (1.) The amendment of the complaint worked an entire change of parties defendant, and ought not to have been allowed.—*Ex parte Collins*, 49 Ala. 69; *Friend v. Oliver*, 27 Ala. 532. (2.) The action was improperly brought in the name of the infant's next friend. If such an action

[Georgia Pacific Railway Co. v. Propst.]

could be sustained, it would not bar a subsequent action by the infant himself, after attaining his majority.—*Whetstone v. Whetstone,* 75 Ala. 499. Independent of statutory provisions, the father might maintain an action for damages, on account of personal injuries to his minor child, *per quod servitium amisit;* and the infant himself might maintain an action, after attaining his majority, for permanent injuries resulting from the same wrongful act. But, under the provisions of the act approved January 23d, 1885, only one action can be maintained for such injuries; and that is given to the father.—Sess. Acts 1884-5, p. 99. This act repeals by implication sections 2898-99 of the Code of 1876, the latter of which sections had already been declared uffconstitutional.—*Smith v. L. & N, Railroad Co.,* 75 Ala. 449; *George v. Skeates & Co.,* 19 Ala. 738; 78 Ala. 413. (3.) The plaintiff, on the evidence adduced, does not bring himself within the terms of the statute on which his action is founded. He was acting outside of the duties imposed by his regular employment: the conductor had no authority to employ him as brakeman, and he can only be regarded as a volunteer. *Gilliam v. Railroad Co.,* 70 Ala. 268; 15 Amer. & E. Railway Cases, 97. (4.) The testimony of Suddeth ought to have been excluded.—1 Greenl. Ev., § 52, 2d ed.; *Railroad Co. v. Allen,* 77 Ala. 494; *Storey v. Union Bank,* 34 Ala. 687. (5.) The contributory negligence of the plaintiff himself, as disclosed by the evidence, was a defense to the action.—*Central R. R. Co. v. Smithson,* 45 Mich. 212; *Cunningham v. Railroad Co.,* 5 McCrary, 465; 42 Mich. 523; *Darracutts v. Railroad Co.,* 2 S. E. Rep. 511; 69 Ala. 106; 61 Ala. 379; 75 Ala. 136.

NeSmith & Sanford, *contra.*—(1.) The plea in abatement, on the ground of misnomer, came too late, and the amendment of the complaint was properly allowed.—*Nixon v. State,* 68 Ala. 535; *Beck v. Glenn,* 69 Ala. 121; *Insurance Co. v. Roberts,* 60 Ala. 431; *Church Conference v. Price,* 42 Ala. 47. (2.) The repeal of statutes by implication is never favored.—*George v. Skeates & Co.,* 19 Ala. 738; *Rawls v. Kennedy,* 23 Ala. 240; *Pearce v. Mobile Bank,* 33 Ala. 693. The statute of January 23d, 1885, does not repeal any existing statutes, but gives an additional remedy for personal injuries, where none was given before; and it can not be construed to take away all right of action from the infant, when the father does not sue. (3.) The conductor of the

train had power and authority, necessarily implied from the necessities of the case, to require the plaintiff to act as brakeman on the trip; and the railroad company can not be heard to say that he was acting outside the scope of his employment.—Wood's Law of Negligence, 876, § 439; 11 R. I. 152; 47 Ala. 322; Thompson on Negligence, 974; 52 Ill. 401; 17 Wall. 553; Smith on Negligence, by Whitaker, 148, note *h*.

STONE, C. J.—It is contended that, under the act approved January 23, 1885—Sess. Acts, 99; Code of 1886, §§ 2587-8-9—the present action by a minor, for an injury done to himself, can not be maintained. In *Pratt Coal & Iron Co. v. Brawley*, at the present term, we decided this question against the views of the appellant. We held that the minor, or, in case of his death, his personal representative, can maintain the action; or, that the father, or, in certain events, the mother may sue; but we held that a suit by one was a bar to a suit by the other. See, also, "Act to define the liabilities of employers," &c.—approved February 12, 1885. Sess. Acts, 115; Code of 1886, § 2590.

The Circuit Court did not err in allowing the amendment of the name of the corporation, substituting *Railway* for *Railroad*. It was not an entire change of a sole party, but only a change of a part of the name.—*N. Y. & Ala. Contr. v. Meyer*, 51 Ala. 325; *An. Ala. Conf. M. E. Ch v. Price*, 42 Ala. 47; *So. Life. Ins. Co. v. Roberts*, 60 Ala. 431; *M. & M. Railway Co. v. Yeates*, 67 Ala. 164.

The proof tends to show that the plaintiff, Propst, had served the defendant railway company in the capacity of brakeman for two or more months, but, at the time of the accident and injury complained of, he was not in that employment. He was then hired, at monthly wages, to serve as watchman at Patton Mines, one of the stations on the railroad. He had been employed to do this service by the superintendent, and his duties as watchman were local, confined to the place or station, Patton Mines. There was conflict in the testimony, whether or not the superintendent had instructed Propst to obey the orders that might be given him by the conductor and engineer of the train after-mentioned.

A train of defendant, with Waring as conductor, was passing down the road, with loaded freight cars. One of the three brakemen on the train was sick, and the conductor,

feeling that he had not sufficient available force of brakemen to manage his train, either requested or commanded the plaintiff to go with him, and supply the place of the sick brakeman. The plaintiff went with him as brakeman, but it was not shown how many miles he had travelled in that capacity. Enough is shown to convince us that he had gone thirty or forty miles, or more, before he reached the station at which he was injured.

The conductor testified, that he had no authority from the superintendent, or from the defendant, to engage or utilize the services of the plaintiff in the capacity of brakeman. Express authority for this purpose was not necessary. The circumstances themselves, about which there is no conflict of testimony, gave him the authority. In such an emergency, there must be discretion and authority somewhere, to supply the place of disabled or missing servants; and no one could exercise this power so well or so prudently, as the conductor in charge of the train. We will, therefore, treat the plaintiff as the lawfully employed servant of the company.

Railroad companies are responsible for the conduct of their agents and officials, done in the natural or necessary discharge of duties, incident to the service they are employed in.—*S. & N. R. R. Co. v. Huffman,* 76 Ala. 492; *Ala. Gr. So. R. R. Co. v. Heddleston,* 82 Ala. 218. The first three counts of the complaint, as amended, are, each of them, good and sufficient.

The fourth count of the complaint presents a different question. As we understand its phraseology, it does not charge that the conductor either commanded or requested the plaintiff to go as brakeman on his train. The import of its language is, that he was on the train of his own accord, and it is not averred that he was performing any services as brakeman. Its language is: "When on a trip down defendant's said road into Fayette county, on the 27th day of January, 1886, as aforesaid, plaintiff being aboard defendant's train at Berry Station, Fayette county, Alabama, was then and there ordered by the conductor, or foreman of said railway company, employed to manage or superintend the business affairs of said company on the aforesaid train, and whilst in the exercise of his superintendence, to couple a freight car to others attached," &c. There is nothing in this count which shows that plaintiff was under, or had been brought under the control of the conductor, or that he was

acting as brakeman, or had been requested to do so.   So far as this count informs us, the plaintiff was a mere passenger on the train; and, so far as the right to control or direct the movements of the plaintiff is shown in this count, the conductor would have had as much authority over any other passenger, or even a by-stander, as he had over him.   Such order or direction, as averred, is entirely without the routine of the conductor's duties, and could not, by its abuse, fasten a liability on the railroad corporation.—*Gilliam v. S. & N. Railroad Co.*, 70 Ala. 268.   The demurrer to this count ought to have been sustained.

In permitting the witness Suddeth to institute a comparison between the drawheads and couplings employed by the defendant railway company and those used on the M. & O. R. R. Co., and to give his opinion that the connecting appliances of the latter are less dangerous than those of the former, the Circuit Court erred.   It is certainly the duty of corporations, and of all others employing servants, to see to it that their "ways, works, machinery and plant," shall not be man-traps, and not to expose their employees to needless hazard; and in selecting between different machinery and instrumentalities, they must keep themselves reasonably abreast with improved methods, so as to lessen the danger attendant on the service.   They are not, however, required to adopt every new invention.   Something must be left to enlightened judgment and discretion.   It is supposed that, in such matters, even the skillful and experienced will frequently differ in the choice of instrumentalities; while neither should be adjudged negligent, for not comforming to some other method, believed by some to be less perilous.   The correct rule is declared in *L. & N. R. R. Co. v. Allen*, 78 Ala. 494, 503, as follows:   "A railroad company's duty to its employees does not require it to adopt every new invention or appliance useful in its business, although it may serve to diminish risks to life, limb or property, incident to its service.   It is sufficient fulfillment of duty to adopt such as are in ordinary use, by prudently conducted roads engaged in like business, and surrounded by like circumstances."   Applying this principle to the present case, if the drawheads and bumpers used by defendant were such as were employed by many well-conducted roads, this would repel all imputation of negligence founded on their mere structure, although other roads, even a majority of them, adopted a different pattern.   Witnesses, who have sufficient knowledge to speak

on the subject, should be allowed, not to compare the practice of one road with that of another, but to testify to the general rules of railroads on the subject, and may give opinion testimony as to the safety or perils attending the different methods. The witness Suddeth did not show himself competent to give his opinion, and did not predicate sufficient *data* to show its admissibility.

In most suits of the class we are dealing with, the question of contributory negligence becomes an important inquiry. It is among the uncontroverted facts in this case, that the defendant railway company had an established rule, that, in coupling cars, the servant should not stand on the track, nor between the cars, but should use a stick, instead of the hand, in lifting the link in coupling. It is also testified, that sticks are kept on the train for the purpose, and that they were adapted to the use. There was also a printed rule, that couplers who disregarded this rule should be discharged. If the plaintiff had used a stick instead of his hand, he would have escaped the injury. The plaintiff, who had acted as brakeman, and had done coupling on defendant's road for two months or more, testified that he had seen coupling done both by the hand and by the use of the sticks, but that he did not know of said rules of the road, until after he had received the injury complained of. This raised a proper inquiry as to contributory negligence. If the plaintiff, either from a knowledge of the rules, or from observing the practice of couplers, had learned the rule or custom of the road, not to use the hand, but a stick in coupling, and, in disregard of such rule or custom, went on the track, between the cars, and attempted to couple with his hands, this would be contributory negligence, and would deprive him of all right to recover in this action.

Charges 2, 3, and 4, given at the instance of plaintiff, are severally subject to criticism, in not submitting the inquiry of contributory negligence as a part of the hypothesis. 3 Brick. Dig. 672–3. But we do not decide this question. *E. T., Va. & Ga. R. R. Co. v. Clarke*, 74 Ala. 443.

Charge 6 is an incomplete sentence, probably the fault of the copyist. We can not properly consider it in its present imperfect condition.

Charge 7 is but an embodiment of the principles asserted in the fourth count of the complaint. As that count sets forth no legal cause of action, the charge is equally faulty.

[Wilson v. Holt.]

For the errors pointed out above, the judgment of the Circuit Court must be reversed, and the cause remanded.

Reversed and remanded.