[No. 14155.   Department One. — September 5, 1891.]

JAMES M. SAPPENFIELD, RESPONDENT, v. THE MAIN STREET AND AGRICULTURAL PARK RAILROAD COMPANY, APPELLANT.

NEGLIGENCE — MASTER AND SERVANT — INJURY TO DRIVER OF HORSE-CAR — LOOSE PIN — INSTRUCTIONS — SAFETY OF APPLIANCES. — In an action by the driver of a horse-car against a street-railroad company for injuries received in consequence of the alleged negligence of the company in furnishing a straight pin to attach the single-tree to the draw-head of the car, which worked out of its hole while the car was in motion, instead of furnishing a safety-pin to prevent accident, it is error to instruct the jury that the obligation upon the master required him to furnish such appliances "as combine the greatest safety with practical use."

ID. — RAILROAD COMPANY NOT BOUND TO SERVANTS AS CARRIER. — A railroad company is not in any respect an insurer of the safety of its employees, and its relations to them differ materially from those existing between a carrier and its passengers, being only the ordinary relations of master and servant.

ID. — MEASURE OF CARE REQUIRED. — The company is only bound to exercise reasonable and ordinary care in the selection of reasonably safe appliances, such as a prudent man would exercise if his own person were exposed to the danger resulting from their use, and to keep them in suitable condition and repair.

ID. — SELECTION AND CARE OF APPLIANCES — QUESTION OF FACT. — Whether a master has been negligent in the selection or care of appliances furnished to his servants is a question of fact, to be determined from all the circumstances of the case.

ID. — BURDEN OF PROOF — NOTICE OF DEFECTIVE APPLIANCE — PRESUMPTION FROM INJURY. — The burden is on the servant to prove negligence on the part of the master, and he must show that the appliance was radically faulty, or so generally obsolete that its adoption or retention would indicate negligence, and that the master knew or had notice that it was defective; and no presumption of negligence can arise from the mere fact of the injury or accident.

ID. — APPLIANCES IN GENERAL USE — IMPROVEMENTS — DEFECTS. — A master is not bound to adopt every latest improvement, and the selection and retention of appliances in general use which are reasonably adapted to the purpose, although better ones are used by others, or later devices

have overcome observed defects therein, does not prove negligence; nor do defects not rendering a generally used appliance positively unsafe indicate negligence, unless it be shown that when selected ordinary care would have disclosed or could have obviated the defects.

ID. — APPLIANCE NOT OBVIOUSLY DANGEROUS — CONTINUED USE. — When an appliance or machine not obviously dangerous has been in daily use for a long time, and has uniformly proved safe and efficient, its use may be continued without the imputation of imprudence or carelessness.

ID. — EVIDENCE — OPINION OF WITNESS — PROVINCE OF JURY. — When the question to be determined is the result of common experience, or is to be inferred from particular facts, the inference is to be drawn by the jury, and not by the witness. If the circumstances out of which negligence is said to arise have been or can be established by proof, the ultimate fact of negligence is to be inferred by the jury, and cannot be established by the opinions of witnesses.

ID. — OPINION OF STREET-CAR DRIVER — SAFETY OF PIN. — Whether the straight pin which fastened the single-tree to the draw-head of a horse-car was safe, or whether, if it should come out, it would be unsafe, are questions for the jury to determine; and the opinion evidence of a street-car driver that from his experience it was not safe, and that in case it should come out the chances are that the horse would get away, is incompetent.

ID. — SUBSTITUTION OF SAFER APPLIANCE AFTER ACCIDENT — NOTICE OF DEFECT — ADMISSION. — It is incompetent to prove that shortly after the accident the employer substituted a safer appliance. The employer is chargeable with negligence only upon proof that before the accident he knew or had notice that the appliance was unsafe or unsuitable to its purpose; and the adoption of a safer appliance after knowledge of an unexpected accident is not an admission of prior negligence.

INSTRUCTIONS — CURING OF ERROR. — An erroneous instruction is not obviated by an instruction subsequently given, wherein the law applicable to the case is properly presented.

ID. — DUTY OF JURY — CONTRADICTORY INSTRUCTIONS. — The jury are bound to accept all the instructions of the court as correct, and when several instructions are inconsistent and contradictory, it is impossible to tell which was adopted by them in reaching their verdict, and the verdict must be set aside.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Stephen M. White*, for Appellant.

The defendant must have known all about the defect, and must, because of the peculiar nature of the case, have been aware of whatever danger was connected with it. (*Wright* v. *N. Y. C. R. R. Co.*, 25 N. Y. 566; Wood

on Master and Servant, 2d ed., secs. 335, 689; *Sullivan* v. *I. M. Co.*, 113 Mass. 396; *Naylor* v. *Chicago etc. R. R. Co.*, 53 Wis. 661; 2 Thompson on Negligence, 971, note 1, 1008, note 3; *Sweet* v. *Ohio Coal Co.*, 9 L. R. A. 861 (Wis.).) An employee must establish three propositions to entitle him to recover from the employer for an injury received in the employer's business, viz.: That the appliance was defective; that the employer had notice thereof, or knowledge, or ought to have had; that the employee did not know of the defect, and had not equal means of knowing with the employer. (Wood on Master and Servant, sec. 414; *T. & P. R'y Co.* v. *Bradford*, 66 Tex. 732; 59 Am. Rep. 739; *Schultz* v. *C. & N. W. R. R. Co.*, 67 Wis. 616; 58 Am. Rep. 881; *Atlas E. W.* v. *Randall*, 100 Ind. 293; 50 Am. Rep. 798; *Pittsburg etc.* v. *Adams*, 105 Ind. 151; Beach on Contributory Negligence, secs. 139, 140; *Porter* v. *Hannibal etc. R'y Co.*, 71 Mo. 66; 36 Am. Rep. 454; *Malone* v. *Hawley*, 46 Cal. 409; *Appel* v. *Buffalo etc. R'y Co.*, 111 N. Y. 550; *De Forest* v. *Jewett*, 88 N. Y. 264; *Smith* v. *Sellers*, 40 La. Ann. 527; Wharton on Negligence, secs. 206, 214; note to *Buzzell* v. *Laconia M. Co.*, 77 Am. Dec. 218.) It was error to instruct the jury that it was the duty of the employer to use such appliances and implements as combine the greatest safety with practical use, as the master is not bound to furnish the safest machinery, nor provide the best methods for its operation. He does his duty if it is of the ordinary character, and such as can be used without danger by the exercise of reasonable care. (*Payne* v. *Reese*, 100 Pa. St. 301; *Louisville & N. R. R. Co.* v. *Orr*, 84 Ind. 50; *Cagney* v. *Hannibal etc. R. R. Co.*, 69 Mo. 416; *Wonder* v. *B. & O. R. R. Co.*, 32 Md. 411; 3 Am. Rep. 143; *Lake Shore etc. R. R. Co.* v. *McCormick*, 74 Ind. 440; *Fort Wayne etc. R'y Co.* v. *Gildersleeve*, 33 Mich. 133; *Stack* v. *Patterson*, 6 Phila. 225; *Umback* v. *L. S. & M. S. R'y Co.*, 83 Ind. 191; *Ladd* v. *New Bedford etc. R'y Co.*, 119 Mass. 412; 20 Am. Rep. 331; *Keith* v. *Granite Mills*, 126 Mass. 90; 30 Am. Rep. 666; *Leonard* v. *Collins*, 70 N. Y. 90; *Burke* v. *Witherbee*, 98 N. Y. 562; *Probst* v. *Delamater*, 100 N. Y. 266; Shearman and Redfield on Negligence, secs.

189, 195, and notes; Cooley on Torts, 2d ed., 650; *Columbus* v. *Troesch*, 68 Ill. 545; 18 Am. Rep. 578; *Toledo etc. R. R. Co.* v. *Conroy*, 68 Ill. 560; *Camp Point Mfg. Co.* v. *Ballou*, 71 Ill. 417; *Porter* v. *Hannibal etc. R'y Co.*, 71 Mo. 66; 36 Am. Rep. 454; *Painton* v. *N. C. R'y Co.*, 83 N. Y. 7; *Smith* v. *St. Louis etc. R'y Co.*, 69 Mo. 32; 33 Am. Rep. 484; *Railroad Co.* v. *Sentmeyer*, 92 Pa. St. 276; 37 Am. Rep. 684; *The Maharajah*, 40 Fed. Rep. 784; *Conway* v. *Hannibal etc. R. R. Co.*, 20 Mo. App. 235; *Rummell* v. *Dilworth*, 111 Pa. St. 343; *Allison M. Co.* v. *McCormick*, 118 Pa. St. 519; 4 Am. St. Rep. 613; *Lehigh & W. C. Co.* v. *Hayes*, 128 Pa. St. 294; 15 Am. St. Rep. 680; *Richards* v. *Rough*, 53 Mich. 212; *Sjogren* v. *Hall*, 53 Mich. 274; *Kern* v. *De Castro etc. Co.*, 125 N. Y. 50; note to *Buzzell* v. *Laconia M. Co.*, 77 Am. Dec. 218; *G., H., & S. A. R'y Co.* v. *Garrett*, 73 Tex. 262; 15 Am. St. Rep. 781; *Carlson* v. *Phœnix R. R. Co.*, 8 N. Y. Super. Ct. 634; 55 Hun, 485.) If it be claimed that the error in the instruction was cured by the first instruction given at the request of the defendant, the answer is, that the two instructions are in this particular contradictory, and it is impossible to determine on which of them the jury acted. (*Chidester* v. *Con. People's Ditch Co.*, 53 Cal. 58; *People* v. *Campbell*, 30 Cal. 312; *Brown* v. *McAllister*, 39 Cal. 573; *People* v. *Anderson*, 44 Cal. 65; *Estate of Cunningham*, 52 Cal. 465; *Bank of Stockton* v. *Bliven*, 53 Cal. 708; *People* v. *Wong Ah Ngow*, 54 Cal. 154; *People* v. *Messersmith*, 57 Cal. 575; *Aguirre* v. *Alexander*, 58 Cal. 21; *People* v. *Monahan*, 59 Cal. 389; *People* v. *Bush*, 65 Cal. 134; *Harrison* v. *S. V. H. G. Co.*, 65 Cal. 376; 3 Wood on Railways, 1457; *Davidson* v. *S. P. Co.*, 44 Fed. Rep. 476.) It devolved upon the employee to prove not only the insufficiency of the appliances, but also to show that the master had notice of the defects, or that by the exercise of ordinary care he might have known of the defect; and the mere fact of the injury or accident does not raise the presumption of negligence. (Wood on Master and Servant, 2d ed., secs. 346, 382; *Wright* v. *N. Y. Cent. R. R. Co.*, 25 N. Y. 566; *Atchison etc. R. R. Co.* v. *Wagner*, 33 Kan. 660; 2

Thompson on Negligence, p. 1053, sec. 48; 1 Shearman and Redfield on Negligence, 4th ed., sec. 222, and authorities cited; *Atchison etc. R. R. Co.* v. *Ledbetter,* 34 Kan. 326; 3 Wood on Railways, 1467; *Columbus etc. R. R. Co.* v. *Troesch,* 68 Ill. 545; 18 Am. Rep. 578; *Keegan* v. *Western R. R. Co.,* 8 N. Y. 175; 59 Am. Dec. 476; *Hayden* v. *Smithville Co.,* 29 Conn. 548; *Painton* v. *N. C. R'y Co.,* 83 N. Y. 7; 14 Am. & Eng. Ency. of Law, p. 904, note 4, p. 905, notes 2, 3; *Tabler* v. *Hannibal etc. R. R. Co.,* 93 Mo. 79; *Porter* v. *R. R. Co.,* 71 Mo. 67; 36 Am. Rep. 454; *Siela* v. *Hannibal etc. R. R. Co.,* 82 Mo. 435; *Rummell* v. *Dilworth,* 111 Pa. St. 343; *Murray* v. *D. & R. G. R. R. Co.,* 11 Col. 124.) The court erred in permitting plaintiff to show that after the accident to Sappenfield instructions were given by defendant's superintendent to alter the character of pins used for coupling purposes. (*Dougan* v. *Champlain etc. Trans. Co.,* 56 N. Y. 1; *Corcoran* v. *Peekskill,* 108 N. Y. 151; *Morse* v. *Minneapolis etc. R'y Co.,* 30 Minn. 465; *Missouri Pacific R. R. Co.* v. *Hennessey,* 75 Tex. 155; *Gulf, C., & S. F. R'y Co.* v. *McGowan,* 73 Tex. 335; 15 Am. St. Rep. 788; *Nalley* v. *Carpet Co.,* 51 Conn. 524; 50 Am. Rep. 47; *Hudson* v. *R'y Co.,* 59 Iowa, 581; 44 Am. Rep. 692; *Kuhns* v. *Wisconsin etc. R. R. Co.,* 76 Iowa, 67; *Colo. Electric Co.* v. *Lubbers,* 11 Col. 505; 7 Am. St. Rep. 255; Patterson's Railway Accident Law, 421, 422; Black's Proof and Pleading in Accident Cases, sec. 30; 2 Shearman and Redfield on Negligence, 4th ed., p. 104, sec. 382.)

*J. R. Dupuy, E. H. Bentley,* and *R. Dunnigan,* for Respondent.

While the master is not bound to provide the servant with instrumentalities absolutely safe, he is bound to have them as safe as ordinary care on his part can provide. (*Treadwell* v. *Whittier,* 80 Cal. 574; 13 Am. St. Rep. 175; *Smith* v. *N. Y. etc. R. R. Co.,* 6 Duer, 225.) The plaintiff, under the circumstances in the case, was not, but the defendant was, required to examine and see that the car-coupling and horse were safe. (*Porter* v.

*Hannibal etc. R. R. Co.*, 71 Mo. 67; 36 Am. Rep. 454;
2 Am. & Eng. R. R. Cas. 45; Wood on Master and
Servant, sec. 347; *Noyes* v. *Smith*, 28 Vt. 59; 65 Am.
Dec. 222; *Ryan* v. *Fowler*, 24 N. Y. 410; 82 Am. Dec.
315.)    If a master subjects his servant to dangers which
he ought to provide against, he is liable for any accident
resulting from them.    (*Patterson* v. *Pittsburg etc. R. R.
Co.*, 76 Pa. St. 389; 18 Am. Rep. 412; *Noyes* v. *Smith*, 28
Vt. 59; 65 Am. Dec. 222.)

HARRISON, J.— The defendant is the proprietor of
a street-railroad in the city of Los Angeles, and the
plaintiff was employed by it as a driver upon one of its
cars.    On the 22d of November, 1888, while engaged
in the service of the defendant, the plaintiff was driving
a horse called "Dan," which was hitched to car No. 4
of the defendant's line of street-cars, and while driving
along Main Street, near Tenth, the horse became de-
tached from the car, and dragged the plaintiff over the
dash-board, throwing him upon the track, where he was
run over by the car and received serious injury, neces-
sitating the amputation of one of his legs.    For the
damage thus sustained he brought this action against
the defendant, alleging that it had been caused by its
negligence in furnishing him with an unsafe and un-
governable horse, and a car " whose appliances and at-
tachments" were in an unsafe and dangerous condition.
The case was tried by a jury, and a verdict rendered in
favor of the plaintiff.    From the judgment entered
thereon, and from an order denying a new trial, the de-
fendant has appealed to this court.

For the purpose of establishing that the appliances
and attachments of the car were unsafe and dangerous,
it was shown that the single-tree by which the horse was
hitched to the car was fastened to the draw-head of the
car by a straight pin.    This pin had a ring at the top
through which a chain kept it attached to the draw-head,
and was five and five eighths inches in length and three
fourths of an inch in diameter, and the holes in the two

bars in the draw-head through which it was inserted for the purpose of holding the single-tree were thirteen sixteenths of an inch in diameter. Testimony was given at the trial to the effect that on a few occasions the straight pin had worked out of its hole while the car was in motion, letting loose the single-tree and giving the horse an opportunity to escape; but it was not shown that any accident or injury had ever resulted therefrom prior to the present instance, although the cars made several hundred trips each day. It was also shown that there was another kind of pin in use, called a safety-pin, which was provided with a device to prevent it from working out of the holes in the draw-head. This safety-pin was upon two of the cars of the defendant which it occasionally used, that had been manufactured for it in St. Louis a few months previous to the accident, and upon two other of its cars, which had recently been manufactured for it in Los Angeles. It was also shown that the straight pin had been in use by the defendant for several years, and was the same kind of pin that was generally in use upon street-cars, as well in San Francisco as in Los Angeles, although two of the lines in Los Angeles had a short time previously adopted the safety-pin upon a few of their cars.

1. The theory upon which the plaintiff's case was tried was, that the defendant was negligent in continuing the use of the straight pin, and in not having furnished the car in question with the safety-pin, and at the close of the testimony the court, at his request, gave to the jury the following instruction: "It is the duty of one who employs another in his business to furnish to such employee such tools, implements, appliances, and machinery as may be needed in the work to be done for the employer, in good order, of sound material, and in safe condition for use, such as will be reasonably best calculated to insure safety in their use by the employee, and such as combine the greatest safety with practical use. The employee has the right to expect this, and in using such implements, appliances, or machinery, the employee

has the right to and may rely upon it, that the tools, implements, and machinery given and furnished to him by his employer to use in his business are such as are required by the law."

This instruction was erroneous in declaring that the obligation upon the master required him to furnish such appliances " as combine the greatest safety with practical use." By this, the jury were told that the appliances required must be such as in practical use will be found to afford the greatest safety; that is, those appliances which from experience are found to combine all the provisions for safety that are capable of being used. The instruction is substantially the same as one given in the case of *Treadwell* v. *Whittier*, 81 Cal. 599, 15 Am. St. Rep. 82, which was approved by this court; but the circumstances which rendered such instruction proper in that case do not exist here. The court in that case was defining the duties of the proprietor of a passenger-elevator, and likening them to the duties imposed upon the carrier of passengers, which require him to keep pace with modern improvement and invention, and adopt such newly invented appliances as will secure the safety of those whom he carries. The relations of the defendant to the plaintiff in this case differ materially from those existing between the carrier and its passengers; for instead of being in any respect an insurer of his safety, the defendant held to the plaintiff only the ordinary relations of a master to his servant. The relative liability of a carrier to its passengers and to its employees is stated by the court of appeals in New York in *Warner* v. *Erie Railway Co.*, 39 N. Y. 471, as follows: "We are not now dealing, it must be remembered, with the liability which a railroad corporation assumes in respect to the safety and security of passengers transported on their road for a compensation, and in regard to whom they become absolute insurers against all defects which the highest degree of vigilance would detect or provide against. The liability here, if there is any, is measured by that lower standard which all the authorities recognize in the

case of an employee, and which is answered if the care bestowed accords with that reasonable skill and prudence which men exercise in the transaction of their accustomed business."

The ground of the plaintiff's cause of action is the negligence of the employer in failing to supply him with suitable appliances with which to do the work for which he is employed. This liability of the master is based upon personal negligence; that is, negligence by himself, or those to whom the matter has been delegated, in the selection of suitable appliances for the use of the servant. He is not required to furnish appliances which are absolutely safe, nor is he bound to furnish the best that can possibly be obtained. He is, however, under obligation to exercise reasonable and ordinary diligence in their selection, and to furnish to his servant such as are reasonably safe and adapted to perform the work for which they are designed, and which, with ordinary care and prudence on the part of the servant, render it reasonably probable that they can be used by him in the ordinary exercise of his employment without danger to himself. If the master has exercised proper care in their selection, — such care as a prudent man would exercise if his own person or life were exposed to the danger that would result from their use, — and has thereafter kept them in suitable condition and repair, he is not liable for an accident that may happen to the servant from their ordinary use. After the master has exercised this care the incidental risks that result from the use of such appliances are assumed by the servant, and are supposed to have been taken into account in fixing the amount of his wages.

Whether in any case the employer has been negligent in the selection or care of the appliances furnished by him to those in his service is a question of fact, to be determined from all the circumstances and surroundings of that case. The burden is on the plaintiff to show some fault on the part of the master. The mere fact of the injury or accident does not raise a presumption of

negligence, and as his negligence is to be measured by his knowledge, or means of knowledge, it must be shown that the master knew or had notice that the appliance was defective. It is not sufficient to show that there were better or safer ones to be had, but it must be shown that the one supplied had some radical fault, or that its use had become so generally obsolete or supplanted by others of a superior character, that its adoption or retention would itself indicate negligence. The master is not bound to adopt every latest improvement in machinery, nor is he liable for an accident which would not have occurred if such improvements had been adopted. If at the time of its selection the appliance in question was the only one in general use, or was the one which was generally used, and was reasonably adapted to the purpose for which it was employed, its selection or its subsequent retention would not of itself indicate negligence, nor would the fact that better ones were used by others, or that later devices had overcome defects that experience had shown this one possessed, be proof of negligence in the continuance of its use. Nor does the circumstance that the appliance has defects which do not render it positively unsafe indicate any negligence in its selection, unless it be also shown that when selected, ordinary care would have either disclosed or could have obviated these defects. It is a well-settled rule that when an appliance or machine, not obviously dangerous, has been in daily use for a long time, and has uniformly proved safe and efficient, its use may be continued without the imputation of imprudence or carelessness. (*Wonder* v. *B. & O. R. R. Co.*, 32 Md. 411; 3 Am. Rep. 143; *Lake Shore & M. S. R. R. Co.* v. *McCormick*, 74 Ind. 440; *L. & N. R. R. Co.* v. *Orr*, 84 Ind. 55; *Payne* v. *Reese*, 100 Pa. St. 306; *Lehigh Coal Co.* v. *Hayes*, 128 Pa. St. 294; 15 Am. St. Rep. 680; *Ga. P. R. R. Co.* v. *Propst*, 83 Ala. 518; *Burke* v. *Witherbee*, 98 N. Y. 565; *Probst* v. *Delameter*, 100 N. Y. 266; *Stringham* v. *Hilton*, 111 N. Y. 188; *Kern* v. *De Castro etc. Co.*, 125 N. Y. 50; *Fort Wayne R. R. Co.* v. *Gildersleeve*, 33 Mich. 133;

*Michigan C. R. R. Co.* v. *Smithson*, 45 Mich. 212; *A., T., & S. F. R. R. Co.* v. *Wagner*, 33 Kan. 666; Wood on Master and Servant, sec. 331; Civ. Code, sec. 1971.)

" When a master employs a servant to do a particular kind of work with particular kinds of implements and machinery, the master does not agree that the implements and machinery are free from danger in their use, but he agrees that such implements and machinery to be used by such servant are sound and fit for the purpose intended, so far as ordinary care and prudence can discover, and that he will use ordinary care and prudence in keeping them in such condition and fitness; and the servant agrees that he will use such implements with care and prudence; and if, under such conditions and circumstances, harm or injury come to the servant, it must be ranked among the accidents the risks of which the servant must be deemed to have assumed when he entered into such service." (*Lake Shore & M. S. R. R. Co.* v. *McCormick*, 74 Ind. 440.)

" An employer is not bound to furnish for his workmen the 'safest' machinery, nor to provide the 'best methods' for its operation, in order to save himself from responsibility for accident resulting from its use. If the machinery be of an ordinary character, and such as can, with reasonable care, be used without danger to the employee, it is all that can be required from the employer. This is the limit of his responsibility, and the sum total of his duty." (*Payne* v. *Reese*, 100 Pa. St. 306.)

"A master is not bound to change his machinery in order to apply every new invention or supposed improvement in appliances, and he may even have in use a machine or an appliance for its operation shown to be less safe than another in general use, without being liable to his servants for the consequences of the use of it. If the servant thinks proper to operate such machine, it is at his own risk, and all that he can require is, that he shall not be deceived as to the degree of danger that he incurs." (*Wonder* v. *B. & O. R. R. Co.*, 32 Md. 411; 3 Am. Rep. 143.)

The error in giving the foregoing instruction was not obviated by the instruction subsequently given at the instance of the defendant, wherein the law applicable to the case was properly presented.   The jury could not determine which of the two propositions was correct. They were bound to accept all the propositions that the court instructed them upon as a correct statement of the law by which they were to be guided, and if the several instructions are inconsistent or contradictory, it is impossible to tell which was adopted by them in reaching their verdict.   (*Brown* v. *McAllister*, 39 Cal. 573; *Chidester* v. *Ditch Co.*, 53 Cal. 56.)

2.   One McNally was called as a witness by plaintiff, and testified that he had worked for the defendant about two years, mostly as driver and conductor, commencing in July, 1887, and continuing until the latter part of March, 1889; and having testified with reference to the different kinds of coupling-pin used by the defendant, was asked, by the plaintiff, the following question: " From your experience in driving those cars and using those pins, would you say that was a safe pin, — the straight pin? "   The defendant objected to this interrogatory upon the ground that no foundation had been laid therefor, and because it was not a proper subject for expert testimony.   The objection was overruled, to which the defendant excepted, and the witness thereupon answered: " It is not safe, for the reason that there is nothing to hold it in the draw-head of the car.   They are liable to work out or bulge out at most any time, and in that case the chances are that the horse gets away."   The defendant's counsel thereupon moved to strike out the answer of the witness to the effect that the chances are that the horse gets away, upon the ground that the matter therein involved is not a proper subject for expert testimony, and that the answer was incompetent, irrelevant, and immaterial.   The court overruled the objection, to which the defendant excepted.

Section 1870, subdivision 9, of the Code of Civil Procedure provides that the opinion of a witness may be given

"on a question of *science, art, or trade,* when he is skilled therein." The general rule, however, is, that witnesses must testify to facts, and not to opinions, and that whenever the question to be determined is the result of the common experience of all men of ordinary education, or is to be inferred from particular facts, the inference is to be drawn by the jury, and not by the witness. When the inquiry relates to a subject whose nature is not such as to require any peculiar habits or study in order to qualify one to understand it, or when all the facts upon which the opinion is founded can be ascertained and made intelligible to the court or jury, the opinion of the witness is not to be received in evidence. If the relation between the facts and their probable results can be determined without any special skill or training, the facts themselves must be given in evidence, and the conclusions or inferences must be drawn by the jury. If the circumstances out of which the negligence is said to arise have been established by proof, or can be shown, the ultimate fact of negligence is an inference to be drawn therefrom by the jury, and is not to be established by the opinions of others. (*Shafter* v. *Evans,* 53 Cal. 32; *Enright* v. *R. R. Co.,* 33 Cal. 236; *Ferguson* v. *Hubbell,* 97 N. Y. 507; 49 Am. Rep. 544; *Hart* v. *H. R. B. Co.,* 84 N. Y. 56; *City of Chicago* v. *McGiven,* 78 Ill. 349; *New England Glass Co.* v. *Lovell,* 7 Cush. 321; *White* v. *Ballou,* 8 Allen, 408; *Muldowney* v. *I. C. R. R. Co.,* 36 Iowa, 473.)

Whether this pin was "safe," that is, unattended with personal risk to the driver, was an issue in the case for the jury to determine from all the circumstances that might be shown.. All the facts upon which the opinion of the witness was founded could be readily laid before the jury, and they could draw the conclusion from these facts as readily and correctly as he. It required no special training or experience to determine whether a straight pin put through the holes of the draw-head was adapted to perform the duties for which it was intended. The pin, single-tree, and draw-head were all before the

jury, and as men of ordinary experience, they were capable of determining their sufficiency and safety. It required no peculiar education to determine the effect of the constant tension which the ordinary pulling of the horse would produce upon the pin while it was in the holes of the draw-head. It had been testified that while driving the car it had at times come out by working up under such tension, and it was open to their observation that it might work out, and the jury was capable of determining what would be the effect if it should come out. Whether if it did come out it was safe or unsafe was a conclusion to be drawn by them, and the opinion of the witness was not to be substituted for theirs, nor was their verdict to be based upon his opinion. The fact that the court should allow the witness to give this testimony would of necessity have great weight with the jury, and have a tendency to overcome any doubt they might entertain as to the capacity of the pin, thus prejudicing the defendant by giving to the jury this inadmissible evidence as a ground for their verdict.

3. Against the objections of the defendant, the court permitted the plaintiff to offer testimony that shortly after the accident the defendant caused the straight pin to be replaced by the safety-pin upon its several cars.

There are some authorities, chiefly in Pennsylvania, which hold that evidence of this kind is admissible as being an admission by the defendant of his negligence in not having previously provided appliances of a suitable character; but the weight of authority is against its admissibility, and the reasons urged in its favor do not commend themselves to our judgment.

The employer is chargeable with negligence in this regard only upon proof that he knew or had notice that the appliance which he had furnished was unsafe or unsuitable to its purpose, and it might be that the very accident which gave occasion for the suit first brought to his notice the defect or insecurity of the appliance. If, however, it be held that the fact of his immediately seeking to obviate this defect, or remove this insecurity, by

a change in the character of the appliance is evidence that the accident resulted from his negligence, we would have the contradiction of imputing to him a knowledge of such defect prior to the occurring of the accident, which he did not acquire until after the accident had occurred.   The negligence of the employer which renders him responsible for the accident depends upon what he did and knew before the accident, and must be established by facts and circumstances which preceded it, and not by acts done by him after its occurrence. The knowledge on his part from which negligence is to be inferred must be established by evidence, independent of any subsequent act in changing the appliance, and any defect in such evidence cannot be supplemented by such act.   It would be unjust to hold that because the employer seeks, by all the aid he gets from the light of experience, to make the implement free from danger he is therefore to be charged with negligence in the use of all prior appliances, even though they were adopted with the best light then at his command.   We have seen that the employer is not chargeable with negligence merely because he does not adopt every new invention immediately upon its production, but the rule contended for by the appellant would make such adoption an admission that he was negligent prior thereto, although the improvement may have been for the first time thus brought to his knowledge, and its adoption may have had no connection with the accident.   Such a rule puts an unfair interpretation on human conduct, and virtually holds out an inducement for continued negligence.   It would be a harsh rule to hold that in all cases of accident resulting from defective appliances the employer is to be held accountable for a negligence which is established solely by his efforts to avoid its recurrence; that precautions taken subsequent to an accident are admissions that he was previously negligent.   He may have exercised all the care which the law requires, and yet in the light of a new experience, after an unexpected accident has occurred, he may adopt additional safe-

guards.   To hold that the adoption of such new appliances which experience has demonstrated are more efficient than those previously in use, or which invention has developed from observing the defects in those originally adopted, shall be an admission that he was negligent prior thereto would prevent the very conduct in employers which they should be urged to follow.   (*Nalley* v. *Hartford Carpet Co.*, 51 Conn. 524; 50 Am. Rep. 47; *Morse* v. *Railway Co.*, 30 Minn. 465; *Corcoran* v. *Village of Peekskill*, 108 N. Y. 151.)   This subject and the authorities bearing thereon are very fully discussed in *Nalley* v. *Hartford Carpet Co.*, 51 Conn. 524, 50 Am. Rep. 47, in which the court uses the following language: "The fact that an accident has happened, and some person has been injured, immediately puts a party on a higher plane of diligence and duty, from which he acts with a view of preventing the possibility of a similar accident, which should operate to commend rather than to condemn the person so acting.   If the subsequent act is made to reflect back upon the prior one, although it is done upon the theory that it is a mere admission, yet it virtually introduces into the transaction a new element and test of negligence, which has no business there, not being in existence at the time."

For these errors, the judgment of the court below, and the order denying a new trial, are reversed.

GAROUTTE, J., and PATERSON, J., concurred.