[S. F. No. 3036.   Department One.—November 11, 1904.]

C. HELLING, Respondent, v. H. B. SCHINDLER, Appellant.

MASTER AND SERVANT—SAFETY AND REPAIR OF APPLIANCES—LIABILITY OF EMPLOYER—QUALIFICATION OF RULE.—The general rule requiring an employer to furnish appliances that are reasonably safe, and to use reasonable care to keep the same in repair, and that this duty cannot be delegated, does not apply to defects arising in the daily use of an appliance which are not of a permanent character and do not require the help of skillful mechanics to repair, but which may easily be, and usually are, repaired by the workmen, and to repair which suitable materials are supplied, unless such defects become actually known to the employer, or continue for so long a time or under such circumstances as to warrant the conclusion that in the exercise of reasonable care he should have known thereof.

ID.—SLIGHT DEFECTS ATTENDANT UPON OPERATION OF MACHINERY—DUTY OF MASTER NOT INVOLVED — NEGLIGENCE OF FELLOW-SERVANT. — Slight defects attendant upon the operation of machinery which, from their nature, require remedying at the hands of the operators themselves, and as a part of the proper operation of the machine, are not required to be remedied by the master; and any negligence in the performance of that duty by a particular employee whose business it is to remedy such defects is the negligence of a fellow-servant.

ID.—DULLNESS OF KNIVES OF PLANER—LOOSENESS OF BELT—REMEDIES FOR OPERATION—EMPLOYER NOT LIABLE.—The mere dullness of the knives of a planer, which may be sufficiently remedied by a file in the hands of an employee, and the mere looseness of a belt, which

may be remedied by putting on a dressing with which an employee is supplied, are defects of such a nature that the employer cannot be held responsible therefor, in the absence of other circumstances.

ID.—EVIDENCE—REPAIRS AFTER ACCIDENT.—Evidence simply to the effect that after the accident the knives were sharpened by the foreman before being again used, is not admissible for any purpose; and its admission is error, necessitating a reversal of a judgment for the plaintiff.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. Frank J. Murasky, Judge.

The facts are stated in the opinion of the court.

C. H. Wilson, for Appellant.

The dullness of the knives and looseness of the belt were defects in operation of the planing-machine which it was no part of the duty of the employer to remedy, but the remedy thereof was committed to an employee, for whose negligence the master was not responsible. (*Webber* v. *Piper,* 109 N. Y. 496; *Cregan* v. *Marston,* 126 N. Y. 568;[1] *McGee* v. *Boston Cordage Co.,* 139 Mass. 445-448; *Johnson* v. *Boston Towboat Co.,* 135 Mass. 209-211;[2] *Steamship Co.* v. *Ingebregsten,* 57 N. J. L. 400;[3] *Harley* v. *Buffalo etc. Co.,* 142 N. Y. 31, 37; *Theleman* v. *Moeller,* 73 Iowa, 108;[4] *Burns* v. *Sennett,* 99 Cal. 363-367; *Noyes* v. *Wood,* 102 Cal. 389-393; *Callan* v. *Bull,* 113 Cal. 593-602; 1 Bailey on Personal Injuries, sec. 259 et seq.; 12 Am. & Eng. Ency. of Law, 2d ed., p. 464; 1 Shearman & Redfield on Negligence, 5th ed., sec. 195, p. 315.) Evidence of the repair of the knives by sharpening them after the accident was inadmissible. (*Sappenfield* v. *Main-Street etc. Co.,* 91 Cal. 48; *Hager* v. *Southern Pacific Co.,* 98 Cal. 309-311; *Turner* v. *Hearst,* 115 Cal. 394-401; *Limberg* v. *Glenwood,* 127 Cal. 598-614; *Dougan* v. *Champlain Transportation Co.,* 56 N. Y. 1; *Nally* v. *Hartford Carpet Co.,* 51 Conn. 524;[5] *Aldrich* v. *Concord etc. R. R. Co.,* 67 N. H. 250; *Georgia etc. R. R. Co.* v. *Cartledge,* 116 Ga. 164; *Morse* v. *Minneapolis etc. R. R. Co.,* 30 Minn. 465; 20 Am. & Eng. Ency. of Law, 2d ed., p. 85; 21 Am. & Eng. Ency. of Law, 2d ed., p. 521.)

[1] 22 Am. St. Rep. 851.
[2] 46 Am. Rep. 458.
[3] 51 Am. St. Rep. 604.
[4] 5 Am. St. Rep. 663.
[5] 50 Am. Rep. 47, and note.

J. L. Geary, Jr., for Respondent.

The foreman, whose duty it was to sharpen the knives and keep the belt in repair and proper condition, was the representative of the employer, and not a fellow-servant. (*Besson v. Green Mountain etc. Co.*, 57 Cal. 20; *Sanborn v. Madera Flume Co.*, 70 Cal. 205; *Davis v. Southern Pacific Co.*, 98 Cal. 24;[1] *Verdelli v. Gray's Harbor etc. Co.*, 115 Cal. 517; *Callan v. Bull*, 113 Cal. 600; *Higgins v. Williams*, 114 Cal. 181; *Tedford v. Los Angeles etc. Co.*, 134 Cal. 76; *Northern Pacific R. R. Co. v. Herbert*, 116 U. S. 642; *Shanny v. Androscoggin Mills*, 66 Me. 420; *Fuller v. Jewett*, 80 N. Y. 46;[2] *Ford v. Fitchburg R. R. Co.*, 110 Mass. 240.[3]) The evidence of subsequent changes was admissible as showing the defective condition of the machinery at the time of the accident. (*Louisville etc. Ry. Co. v. Malone*, 109 Ala. 518; *Kuhns v. Wisconsin etc. Ry. Co.*, 76 Iowa, 71; 21 Am. & Eng. Ency. of Law, 2d ed., p. 522; *Butcher v. Vacaville etc. Ry. Co.*, 67 Cal. 518-525; *Colorado Mtg. Co. v. Rees*, 21 Colo. 435; *Marder, Luse & Co. v. Leary*, 35 Ill. App. 420; aff. 137 Ill. 319; *Pennsylvania Co. v. Witte*, 15 Ind. App. 583; *City of Chicago v. Dalle*, 115 Ill. 386; *Kraatz v. Brush etc. Light Co.*, 82 Mich. 457; *Brooke v. Chicago etc. R. Co.*, 81 Iowa, 504; *San Antonio etc. Ry. Co. v. Beam*, (Tex. Civ. App.) 50 S. W. Rep. 911; *Harroun v. Brush Electric Light Co.*, 12 N. Y. App. Div. 129; *Norris v. Atlas S. S. Co.*, 37 Fed. 426; *Atchinson etc. Ry. Co. v. McKee*, 37 Kan. 592.)

ANGELLOTTI, J.—This is an action for damages for personal injuries. The plaintiff was employed by defendant as a wheelwright, and his left hand was badly cut by the knives of a buzz-planer while he was using such planer in the course of his employment. His claim, as set forth in his complaint, was that, at the time of the accident, the planer "was out of repair and unsafe for the uses and purposes for which said machine and apparatus were intended, to wit: the knives and apparatus thereof were dull, and the belt thereof connecting said machine with the power-shaft of said plant and putting said machine and the said knives in motion was loose and failed to give to said knives speed and velocity sufficient

---

[1] 35 Am. St. Rep. 133.                 [3] 14 Am. Rep. 598.
[2] 36 Am. Rep. 575.

and necessary to plane a board upon which plaintiff was then operating," by reason of which, while planing a board, his left hand was thrown upon and in the knives of the machine.

He obtained a judgment for twenty-five hundred dollars, and the defendant appeals from the judgment and from an order denying his motion for a new trial. The defendant in his answer denied these allegations of the complaint. He also alleged contributory negligence on the part of the plaintiff, and also that the injury was caused by the fault and negligence of a fellow-servant.

1. The principal question discussed by counsel in this case is as to whether, assuming that the accident was due to the dullness of the knives or the looseness of the belt, the evidence does not show a case where, under the circumstances, the negligent condition must be attributed to the negligence of a fellow-servant, rather than that of the employer.

The trial court adopted the theory that for any such conditions, the employer must be held responsible, and that there was no question as to the negligence of a fellow-servant involved in the case. It therefore refused to grant a nonsuit, refused to instruct the jury upon the question of negligence of a fellow-servant, and instructed the jury to the effect that if the planing-machine was not in a reasonably safe and suitable condition in either of the particulars claimed, and plaintiff did not or could not by the exercise of reasonable care know of such condition, and his injuries were the result thereof, their verdict must be for the plaintiff.

Excluding from consideration the evidence as to subsequent repairs, which, as we shall show hereafter, was improperly admitted, the case presented was substantially as follows:—

The planing-machine in question was used, as their needs required, for the purpose of planing small pieces of wood, by all of the men employed in the woodworking department of defendant's establishment, including a foreman of such department. There were six or seven men so employed. The planer was at the time of the accident in perfect condition, except that the knives had then become dull to some extent, and the belt somewhat loose, from use by these employees. No part of the machine broke or gave way. It was the duty of

the foreman to see that the knives were kept sufficiently sharp and the belt sufficiently tight to properly run the machine. When the belt became so loose as to slip, the usual and customary way of remedying the defect was by putting on belt-dressing, unless it became so loose as to require being shortened. When the knives became dull from use, which was a frequent occurrence, the ordinary method of sharpening was for the foreman to file them, without removing them from the machine, unless the edges had become so worn from long use that they could not be filed to advantage, in which event they were taken out and sent away to be ground. As long as the machine would, when used in the ordinary manner, efficiently do the work, it could not be said to be defective in either of the respects suggested, and both alleged defects were of such a nature that, admittedly, they would at once come to the knowledge of any experienced operator attempting to use the machine, for the effect of the machine upon the board sought to be planed would indicate the condition.

Plaintiff had been employed in this shop for more than nineteen months, and had continuously used this machine, as required by his work, sometimes ten, fifteen, or twenty times a day, up to the time of the accident. He had used it on the day before the accident. At the time of the accident, having occasion to plane a board, he waited for the foreman to finish planing a board, and then put his own board on the machine. He passed the board over the machine once, and noticed nothing wrong with the manner in which it worked, and, the board not being sufficiently smooth, he commenced to pass it over again, when, as he said, "it started jumping repeatedly and threw my hand into the knives." He knew that the knives in this planer became dull from use and frequently had to be sharpened, and that the belt frequently became somewhat slack from use, but claimed that he did not know that the knives were dull or the belt slack in this instance until the moment of the accident. There is nothing to indicate that the machine had not worked efficiently up to that very moment. The knives were dull to an extent, but not so dull but that they would do the work all right, and the same is true as to the slackness of the belt. The machine had been constantly used on the morning of the accident, right up to the happening thereof, between ten and eleven o'clock. Nor is there any-

thing in the record to indicate that anything more was necessary to fully sharpen the knives than the mere filing thereof, or that the slackness of the belt could not be easily remedied by means at hand, which it was the duty of the foreman to use.

We have thus evidence tending to show a case where the duty of keeping a single piece of safe and adequate machinery in proper running order had been confided to one of six or seven employees, whose duty it was to use the machinery in common, and a case where the particular defects complained of were defects necessarily attendant upon the use of such machinery, which would at once manifest themselves to an operator thereon, and which could immediately be easily remedied by simply filing the knives and tightening the belt, duties which may with propriety be said to have to do only with the operation of the machinery.

It is manifest that the rule requiring an employer to keep appliances furnished to employees in a reasonably safe and suitable condition, a rule absolutely essential to the proper protection of employees, cannot be held applicable to every defect arising in the daily use of the appliance and consequent upon such use.

It is incumbent upon the employer to furnish an appliance that is reasonably safe, and to use reasonable care to keep the same in proper repair, and this duty he cannot delegate so as to escape liability. The well-settled rule in this regard is clearly stated, and the authorities cited, in *Shelton* v. *Pacific Lumber Co.*, 140 Cal. 507, 511.

But there are certain duties necessarily attendant upon the operation of some appliances, and which really have to do only with their proper operation, which if left unperformed render the machinery unsafe, or at least inefficient. Take, for instance, the necessity of keeping certain machinery well oiled. A locomotive engineer is injured solely because of the negligence of his fireman in the matter of oiling the machinery of the engine. The machinery was made unsafe by reason of such negligence, but if the employer has used reasonable care in the employment of the fireman, he cannot be held responsible to the engineer for his negligence. Such a duty must of necessity be intrusted to the operatives, and has nothing to do with the employer's duty of furnishing and keeping

in repair. And the same would clearly be true as to the duty of keeping the planing-machine in question well oiled, which duty, the record shows, was that of another one of the six or seven employees using the machine. As was said in the case of *Webber* v. *Piper*, 109 N. Y. 496, which was the case of a circular saw dull from use, "There are many matters of detail in the management of safe and adequate machinery which must be intrusted to the operatives, and as to which the master owes no duty except the employment of competent workmen. . . . The line of division between the duty of the master to furnish and maintain safe and adequate machinery, and that of the operative to manage and handle it with prudence and care, is difficult to define by any general description, but is quite obvious when each case, as it arises, comes under consideration. In the one before us, the neglect, if any, was in a detail of the management of the machinery. A master builder might furnish proper tools to his workmen, but it would not be his duty to sharpen every chisel as it became dull, or set every saw when that need arose." In *Cregan* v. *Marston*, 126 N. Y. 568,[1] it was said: "The servants cannot furnish the machines. That is the master's right and duty, but the servant who uses them can and should keep them in order for their proper and safe daily use when furnished with the necessary means of so doing and when perfectly capable of correcting the defect."

In Bailey on Personal Injuries (vol. 1, sec. 259) it is declared that "the general rule does not apply to defects arising in the daily use of an appliance which are not of a permanent character and do not require the help of skillful mechanics to repair, but which may easily be and usually are repaired by the workmen, and to repair which proper and suitable materials are supplied." (See, also, *Cregan* v. *Marston*, 126 N. Y. 568;[1] 20 Am. & Eng. Ency. of Law, 2d ed., p. 89; 1 Shearman & Redfield on Negligence, 5th ed., sec. 195; *McGee* v. *Cordage Co.*, 139 Mass. 445.) This principle has been applied in many cases, and we know of no case that has gone to the extent of holding that there is not some such limitation upon the general rule as above suggested. The differences that we find in the reported cases are upon the question as to whether the facts of a particular case bring it

[1] 22 Am. St. Rep. 854.

within the operation of the general rule or the qualification thereof, for, as said in *Webber* v. *Piper,* 109 N. Y. 496, the line of division is difficult to define by any general description. The statement quoted above from Bailey on Personal Injuries is, at least so far as those engaged in the common use of an appliance are concerned, sustained by the great weight of authority. Of course, if any such defects as are included therein become actually known to the employer, or continue for so long a time or under such circumstances as to warrant the conclusion that, in the exercise of reasonable care, he should have known thereof, another element is introduced, upon which a liability upon his part might be based. There is, however, no such element shown by the record in this case. The qualification we are considering relates only to such slight defects attendant upon the operation of machinery as from their nature require remedying at the hands of the operators themselves and as a part of the proper operation of the machine. We are of the opinion that it is clear that any such mere dullness of the knives in the planer in question, produced by the ordinary use thereof, as might be sufficiently remedied by the use of a file in the hands of one of the employees, was a defect of such a nature that the employer could not be held responsible therefor, in the absence of other circumstances. It was something necessarily attendant upon the use of the machine which could be easily remedied whenever it occurred by the operators themselves, and for which the means of remedying were supplied to one of their number. The remedying of such a defect would really be a part of the proper operation of the machine, and therefore not "an act the duty for the performance of which belongs in law to the master," and any negligence in the performance of that duty by the particular employee whose business it was to perform it would be the negligence of a fellow-servant.

The same, we think, is true as to the belt, if it be assumed that the slackness thereof could have contributed to the accident.

We have examined all of the many cases cited by plaintiff's counsel, and find nothing therein in conflict with the views already stated.

The general rule as to the employer's liability is fully conceded, and it may be freely admitted that he must take notice

of the liability of appliances to wear out from use and become
unsafe, and guard against such conditions. The qualification
of the rule as to such defects as are attendant upon the opera-
tion of the machinery, and the remedying of which is in its
nature really a part of such operation, and therefore the duty
of the employee rather than the employer, is not disputed by
the authorities cited, but is in fact expressly recognized by
some of them.

It is manifest from the foregoing that, independent of the
question as to whether there was evidence which would sup-
port a finding of negligence on the part of defendant, and as
to which the trial court said in denying the motion for a
nonsuit, "It is a very, very close question in my mind," the
court erred in instructing the jury to the effect that they
should find for plaintiff, if they believed that the machinery
was at the time of the injury not in a reasonably safe and
suitable condition in both or either of the particulars claimed
by plaintiff, that plaintiff did not know of such defective
condition or could not have known thereof by the exercise of
ordinary care, and that his injuries were the result thereof.
There was certainly evidence which, under the views already
stated, would have sustained a finding that any defective con-
dition in the respects suggested was due to the negligence of
a fellow-servant rather than that of the master. The instruc-
tion noted ignored this condition of the evidence, and required
a verdict for plaintiff, even though the negligence was solely
that of the fellow-servant.

2. There was also error necessitating reversal in the admis-
sion of evidence as to repairs made after the accident.
Whether or not any negligence on the part of defendant was
the proximate cause of the accident to plaintiff was one of
the matters in issue. The evidence plainly showed that the
knives of the planer were more or less "dull," and that the
belt connecting the machine with the motive power was more
or less "loose." The questions in this connection were, how-
ever, whether the knives were so dull and the belt so loose as
to render the planer in any degree unsafe for use in the man-
ner in which it was ordinarily used, whether the defendant
knew, or in the exercise of reasonable care should have known,
of these conditions, and whether such dullness or looseness,
or both, proximately caused the accident. Unless these ques-

tions could be answered in the affirmative, there could be no finding of actionable negligence on the part of defendant.

Under these circumstances, over the objection of defendant that the proposed evidence was irrelevant, immaterial, and incompetent, and that it was not proper to show the mere fact of repairs made after the accident, or to show any act done by defendant with reference to the machine after the accident, plaintiff was allowed to introduce evidence to the effect merely that immediately after the accident the knives, before being again used, were taken by order of defendant's foreman to a planing-mill and sharpened, and also that directly after the accident the belt was tightened by said foreman, by taking an inch and a half or two inches out of it. There was nothing in the evidence so given to indicate how much "sharpening" was done, or what work was necessary to make the knives "sharp." The only conceivable effect of this evidence. as to the sharpening of the knives, limited as it was to the mere fact of the making of repairs immediately after the accident, was to impute to defendant's foreman an admission to the effect that the knives were so dull as to render the machine unsafe for use, and that such condition was the cause of the accident. Assuming that the foreman could bind the defendant by any such admission, it is now well settled in this state, in accord with the rule prevailing generally elsewhere, that evidence of precautions taken and repairs made after the happening of the accident is not admissible to show a *negligent* condition at the time of the accident. This matter was fully discussed in the case of *Sappenfield* v. *Main-Street etc. Co.,* 91 Cal. 48, where this court said: "The negligence of the employer which renders him responsible for the accident depends upon what he did and knew before the accident, and must be established by facts and circumstances which preceded it, and not by acts done by him after its occurrence." The court there approvingly quoted from *Nally* v. *Hartford Carpet Co.,* 51 Conn. 524,[1] as follows: "The fact that an accident has happened, and some person has been injured, immediately puts a party on a higher plane of diligence and duty, from which he acts with a view of preventing the possibility of a similar accident, which should operate to commend rather than to condemn the person so acting. If the

[1] 50 Am. Rep. 47, and note.

subsequent act is made to reflect back upon the prior one, although it is done upon the theory that it is a mere admission, yet it virtually introduces into the transaction a new element and test of negligence, which has no business there, not being in existence at the time." The Sappenfield case has been followed and approved in *Hager* v. *Southern Pacific Co.,* 98 Cal. 309, 311; *Turner* v. *Hearst,* 115 Cal. 394, 401; *Limberg* v. *Glenwood,* 127 Cal. 598, 604. The decision in *Butcher* v. *Vacaville Ry. Co.,* 67 Cal. 518, 525, so far as it is in conflict with these views, has been, in effect, overruled by each of the cases cited.

Counsel for plaintiff concedes that it is settled in California that evidence of subsequent repairs or changes is not admissible to prove prior negligence. He, however, claims that the evidence was admissible here to show the actual condition of the machinery at the time of the accident.

There is a line of decisions in other states upholding what may be said to be a qualification to the rule just discussed, to the effect that where evidence of subsequent changes, though it may be in the way of repairs or additional precautions, fairly tends to show the actual conditions existing at the time of the accident, it is admissible *for that purpose.* It would seem unnecessary to consider this alleged qualification of the general rule, for we cannot see that it is at all applicable to the evidence under consideration. So far as the knives were concerned absolutely nothing was shown thereby beyond the mere fact that they were put through the process of being sharpened anew before again being used. This mere fact tended to show at most nothing more than an admission on the part of the foreman that they were so dull as to render the machine unsafe for use, and that the accident was caused by this condition, and came within the effect of the general rule already discussed.

The qualification relied on by plaintiff does not go to the extent necessary to sustain respondent under the facts of this case. The first decision cited and quoted from by him, *Louisville etc. Ry. Co.* v. *Malone,* 109 Ala. 518, declares emphatically as follows: "In our opinion, if nothing can be shown except the fact of repairing, that fact is not competent to be considered by the jury. To hold that an act of repairing affords evidence tending to show that a previous injury was

the result of a defect in the appliances would deter a prudent person from making repairs." In the second case cited and quoted from by him, *Kuhns* v. *Wisconsin etc. Ry. Co.*, 76 Iowa, 71, there was a disputed question of fact as to whether there was a low joint in the railroad track at the place and time of the accident, and evidence was admitted to show that some sectionmen, discovering the accident, went to the place where the low joint was and raised it up to a level. This evidence was held admissible solely as tending to show the actual condition of the joint at the time of the accident; but the judgment was reversed, for the reason that the evidence had been admitted without any limitation as to its purpose, and the jury had been left at liberty to consider the evidence as an admission or confession of the defendant that the condition of the joint was the cause of the accident.

As the particular evidence in question was, in our judgment, inadmissible for any purpose, it is unnecessary to consider the contention of respondent to the effect that appellant should have had it limited by proper instruction to the purpose for which it may have been admissible.

It is further urged that if the evidence was improperly admitted, the error was not prejudicial, "in view of the admission of appellant that the machine was in a defective condition." We find no admission on the part of appellant, except such as may be shown by the particular evidence under consideration, to the effect that the knives were in such a condition as to render the machine unsafe for use. It was said of improperly admitted evidence in *Estate of James*, 124 Cal. 653, approvingly quoted in *Rulofson* v. *Billings*, 140 Cal. 452, 560: "If improper evidence under objection has been admitted, it is impossible for this court to say how much weight and influence it had in the mind of the trial court in framing its findings of fact. The improperly admitted evidence may have been all-powerful to that effect. As far as this court knows, it may have been that particular evidence which turned the scale and lost the case to the appellants. This must of necessity be the rule wherever improper evidence has been admitted which upon its face tends in any degree to affect the final conclusion of the court."

This is manifestly applicable to the case at bar. Under the circumstances here appearing, it is impossible for this court

to say how far the evidence as to the sharpening of the knives subsequent to the accident, tending to show an admission on the part of defendant's foreman to the effect that the accident was due to an unsafe condition of the knives, operated to induce a verdict for plaintiff. As said in the case quoted from, it may have been all-powerful to that effect.

It is unnecessary to discuss any of the other questions presented. We have sufficiently indicated our views as to the general questions presented, for all the purposes of a new trial.

The judgment and order are reversed.

Shaw, J., and Van Dyke, J., concurred.

Hearing in Bank denied.