[Civ. No. 23171.   Second Dist., Div. Two.   Jan. 8, 1959.]

LILLIAN PIERCE, Respondent, v. J. C. PENNEY
COMPANY (a Corporation), Appellant.

Schell, Delamer & Loring and Patrick M. Hyde for Appellant.

Fleming & Anderson and Clifford R. Anderson, Jr., for Respondent.

HERNDON, J.—Appeal from a judgment awarding plaintiff damages for personal injuries suffered in a fall on stairs in defendant's store. Defendant's sole contention is that the trial court committed prejudicial error in admitting evidence that subsequent to the accident the terrazzo stairs on which plaintiff fell were changed by the installation of adhesive or abrasive strips across the surface of the steps. Plaintiff's position is that (1) the evidence was admissible for the purpose of impeaching defendant's witness, and (2) assuming there was error, the form of objection made by defendant in the

trial court was not sufficient to preserve the right to a review of the ruling in question.

The facts are not in dispute: On October 12, 1956, plaintiff was a patron in defendant's Westchester store in Los Angeles. After making a purchase, plaintiff slipped and fell down a stairway suffering serious injuries. The steps on which she fell were constructed of terrazzo, a form of concrete composed of marble chips and cement which is ground down and polished to a smooth surface.

Plaintiff testified that the steps "felt sort of slick." Referring to the terrazzo surface of the stairway landing, she said: ". . . it seemed kind of slick under my feet . . ." After plaintiff had completed her testimony, Mr. Scheufele, defendant's store manager, was called for examination under section 2055, Code of Civil Procedure. Plaintiff's counsel asked Mr. Scheufele whether he had noticed prior to the time of the accident ". . . that these steps were very slippery, very hard surface and shiny?" The witness answered in the negative. Counsel then inquired: "Well, isn't it true, Mr. Scheufele, that shortly after this accident occurred that you directed that stripping be—directed that an abrasive stripping be applied to these steps?" Defendant objected to this question on the ground that it violated the rule of law which renders inadmissible any evidence of changes made or precautions taken after the occurrence of an accident.[1] The court overruled the objection, pointing out that if the witness answered the question in the affirmative, the answer would be admissible as being "in the nature of impeachment" and that plaintiff could then ask what was done. But the witness answered the question in the negative, and stated that he neither directed that such abrasive stripping be applied nor supervised the installation of such stripping. The court thereafter sustained defendant's objections to three different questions designed to elicit testimony from Mr. Scheufele that such abrasive stripping had been installed subsequent to the accident.

Defendant called as its own witness a Mr. Lammers, section manager of the store, who went to the scene of plaintiff's fall

---

[1]Counsel in this case anticipated the issue of law here involved, and made it a subject of discussion with the judge in chambers prior to the beginning of the trial. In the course of this conference in chambers, the respective positions of the parties were fully stated and there was a discussion of the decisions in *Daggett* v. *Atchison, T. & S. F. Ry. Co.*, 48 Cal.2d 655 [313 P.2d 557]; *Inyo Chemical Co.* v. *City of Los Angeles*, 5 Cal.2d 525 [55 P.2d 850] and *Hatfield* v. *Levy Brothers*, 18 Cal.2d 798 [117 P.2d 841].

immediately after it occurred, and inspected the steps. He testified that there was no foreign substance on the steps and that they were not slippery. The transcript of plaintiff's cross-examination of the witness Lammers reads as follows: "By Mr. Anderson: Q. Mr. Lammers, you testified that in your opinion the steps were not slippery; is that correct? A. Yes. Q. Well, isn't it a fact, Mr. Lammers, that adhesive strips were added shortly after the accident to these steps? Mr. Birnie: I object to that, your Honor, as being immaterial. The Court: Overruled. The Witness: Will you repeat the question. (Question read.) The Witness: Yes."

In the course of his argument to the jury, counsel for plaintiff stated: "And Mr. Lammers, the last man up, said, 'No, it is not slippery, it is not slippery,' but his testimony is to be disbelieved by you because afterwards there was a change made." The jury was instructed to the effect that the evidence of the subsequent alteration was not to be considered as evidence of negligence on the part of defendant, but was admitted "for the purpose of impeaching the witness giving the testimony."

Thus, there is presented to us the clear-cut question of law whether evidence of precautions taken or changes made after the happening of an accident is admissible to impeach a nonexpert witness who testified concerning his observations as to the appearance or condition of the premises at the time of the accident, but who had nothing whatsoever to do with the making of the changes or the taking of the precautions thereafter.

"The general rule which is supported by the overwhelming preponderance of authority is that evidence of repairs or alterations or of precautions taken after an accident is not admissible either to prove antecedent negligence, or as an admission of negligence. Early cases in several states, notably, California, Georgia, Illinois, Indiana, Minnesota, New York, Pennsylvania, Utah and Washington held to the contrary, but these cases were overruled by later ones in all of these jurisdictions. In Kansas alone is the admissibility of such evidence settled." (Annotation: "Admissibility of evidence of repairs, change of conditions, or precautions taken after accident," 170 A.L.R. 7, 8, 9; see also 20 Am.Jur. 267-268, § 282; 31 C.J.S. 1054, § 291.)

California's adherence to the prevailing general rule and the considerations of policy which underlie it are indicated by the following from *Daggett* v. *Atchison, T. & S. F. Ry. Co.*,

48 Cal.2d 655, 660-661 [313 P.2d 557]: "It is the general rule in this state that evidence of precautions taken and repairs made after the happening of the accident is not admissible to show a negligent condition at the time of the accident. (*Helling* v. *Schindler,* 145 Cal. 303 [78 P. 710]; *Church* v. *Headrick & Brown,* 101 Cal.App.2d 396, 413 [225 P.2d 558].) The reason for the rule was well stated in *Sappenfield* v. *Main St. & Agr. Park R. R. Co.,* 91 Cal. 48, 62 [27 P. 590]: 'It would be unjust to hold that because the employer seeks, by all the aid he gets from the light of experience, to make the implement free from danger he is therefore to be charged with negligence in the use of all prior appliances, even though they were adopted with the best light then at his command. . . . He may have exercised all the care which the law requires, and yet in the light of a new experience, after an unexpected accident has occurred, he may adopt additional safeguards. To hold that the adoption of such new appliances which experience has demonstrated are more efficient than those previously in use, or which invention has developed from observing the defects in those originally adopted, shall be an admission that he was negligent prior thereto would prevent the very conduct in employers which they should be urged to follow.' "

It is well recognized by all the authorities that there are certain valid exceptions to the general rule above stated. (McCormick, Evidence, 544, § 252; Annotation: "Evidence of precautions after accident," 170 A.L.R. 36.) ■ An exception to the general rule of inadmissibility recognized in California is that in appropriate circumstances evidence of subsequent precautions or repairs may properly be admitted when it tends to impeach the testimony of a witness. (*Daggett* v. *Atchison, T. & S. F. Ry. Co., supra,* 48 Cal.2d 655, 661; *Hatfield* v. *Levy Brothers,* 18 Cal.2d 798, 809-810 [117 P.2d 841]; *Inyo Chemical Co.* v. *City of Los Angeles,* 5 Cal.2d 525, 543-544 [55 P.2d 850].)

As justification for the ruling presently under review, respondent seeks to invoke the last mentioned exception to the general rule, that is to say, she contends that in the instant case the evidence of subsequent changes or precautions tended to impeach the testimony of the witness Lammers.

The generally recognized grounds of impeachment and the methods by which a witness may be impeached are well known. (Code Civ. Proc., §§ 1847, 2051 and 2052; see Witkin, California Evidence, 685, § 640; McCormick, Evidence, 52, § 33 et seq; 3 Wigmore, Evidence, 362, § 874 et seq.) The instant

case requires a consideration of only two of the recognized methods of impeachment since no other has been invoked, either in the arguments of respondent or in any of the decisions cited by her: (1) by proof that at some other time the witness has made statements or has conducted himself in a manner evincing a belief inconsistent with the fact or belief asserted on the witness stand; (2) by contradictory evidence. We are unable to perceive how any other method or form of impeachment could possibly be involved or be asserted to be applicable here. Accordingly, let us separately consider these two recognized methods of impeachment and inquire whether either of them was properly utilized by respondent when she offered the evidence in question for the purpose of impeaching the witness Lammers.

■ (1) *Impeachment by evidence of previous conduct inconsistent with the fact or belief asserted by the witness on the stand.* Impeachment by evidence of precautions taken after an accident has been held proper in cases where the witness *himself* authorized, recommended, approved, directed, or supervised the making, or himself made the subsequent repair, alteration or change of procedure. It is readily apparent that the trier of the facts might reasonably consider such *conduct* on the part of the witness to be inconsistent with his *testimony* that in his opinion, or according to his observation, the condition existing before the change was safe or free from defect. As we shall demonstrate shortly, this was the nature of the impeaching evidence held admissible in the cases relied upon by respondent. (*Hatfield* v. *Levy Brothers, supra,* 18 Cal.2d 798, 809-810; *Inyo Chemical Co.* v. *City of Los Angeles, supra,* 5 Cal.2d 525, 543-544; *Daggett* v. *Atchison, T. & S. F. Ry. Co., supra,* 48 Cal.2d 655, [with respect to one of the two witnesses involved in *Daggett*]).

■ But, manifestly, the fact that after the accident some unidentified person *other than the witness* directed or authorized alterations affords no basis for the utilization of the method of impeachment now under consideration. ■ The witness Lammers had absolutely nothing to do with installing or ordering the installation of the abrasive strips. There was no evidence of conduct on his part which was in the slightest degree inconsistent with any observation or belief to which he testified.

Although it seems clearly to beg the question, the following statement from respondent's brief confirms our observations in regard to the matter presently under discussion: "The pur-

pose of impeachment in the instant case was *not to show prior inconsistent acts or statements*, but rather to impeach his testimony." (Emphasis added.) And the following expressions of respondent's counsel in the course of a discussion in chambers of the trial judge are illuminating: "He [Lammers] has testified that in his opinion it wasn't slippery. Now, if that is a fact that that is his opinion, then whether or not his opinion is entitled to any weight I think that we are entitled to show for impeachment purposes that *his opinion was not substantiated by others and therefore is of little weight.* Now, this is a common method of impeachment, and if you will look at the *Inyo* case, *Inyo* v. *City of Los Angeles*, I think that's exactly what happened in that case." (Emphasis added.)

That the last quoted statement of respondent's counsel betrays a misconception of the basis for the ruling in the Inyo case is apparent from the following language of that decision holding that the trial court did not commit reversible error in connection with plaintiff's cross-examination of defendant's witness Van Norman (5 Cal.2d 525, at p. 543): "This witness was employed in the construction of the aqueduct and *was in charge of maintenance and operation.* On direct examination he testified to his inspection in 1921 of the territory surrounding the canyon where the break subsequently occurred, and declared that it was his opinion at that time that no overhead or underground drainage was necessary. On cross-examination he was asked whether he had authorized the construction of a large number of spillways after the break, and defendant's objection to the question was overruled. Defendant points to the settled rule that changes made or precautions taken after an accident are not admissible to show negligence at the time of the accident. Counsel for plaintiff, however, made it clear that this questioning was not directed to the issue of negligence, but was for the purpose of weakening the testimony of defendant's *expert* witness by showing that he had subsequently changed his opinion as to the necessity of drainage." (Emphasis added.)

(2) *Impeachment by contradictory evidence.* As Wigmore[2] and McCormick[3] have pointed out, impeachment by contradiction may be accomplished either by eliciting a contradictory fact on cross-examination or by calling other wit-

---

[2] 3 Wigmore, Evidence, 652, § 1000.
[3] McCormick, Evidence, 100, § 47.

nesses in rebuttal. The contradictory evidence may be either direct or circumstantial. But all the authorities seem to take for granted the truism that the contradictory evidence must be *competent* evidence.

▮▮ Applying these principles specifically to the instant problem, the fact that abrasive strips were applied to the steps after the accident can be regarded as admissible to contradict the observation of the witness Lammers only if we accept the premise that proof of this fact constitutes competent evidence tending to prove that before the abrasive strips were applied, the steps were slippery, that is to say, unsafe.

▮▮ But the authorities agree that, absent special circumstances justifying an exception, evidence of subsequent precautions is not competent to prove lack of safety in the antecedent condition. While Wigmore seems to rest the exclusionary rule largely on the ground of lack of *relevancy*,[4] McCormick treats it as a rule of *privilege*, emphasizing ". . . the very urgent policy against discouraging the taking of safety measures."[5] The language of *Sappenfield* v. *Main St. & Agr. Park R. R. Co.*, 91 Cal. 48 [27 P. 590], quoted with approval in *Daggett* v. *Atchison, T. & S. F. Ry. Co.*, 48 Cal.2d 655, 660-661 [313 P.2d 557], seems to ground the exclusionary rule upon considerations of policy as well as upon lack of probative value or materiality. And Witkin[6] puts the matter as follows:

"(1) *Rule and Theory of Exclusion.* In a negligence case the question at issue is whether the defendant exercised due care at the time of the injury to plaintiff, in the light of existing knowledge or notice of the circumstances. When an accident occurs, new knowledge is gained of possible risks, and the defendant may, to avoid future harm, make repairs or improvements or practice additional safety measures. Taking such subsequent precautions in the light of knowledge later acquired may not be relevant on the issue of negligence at the earlier time; and, even if its relevancy is conceded, the effect of allowing the evidence would be to discourage persons from engaging in such highly beneficial activity. Accordingly, either on grounds of irrelevancy or public policy, the evidence is *excluded* on the issue of negligence. (*Helling* v. *Schindler* (1904), 145 Cal. 303, 312 [78 P. 710] ; *Gorman* v. *Sacramento*

---

[4] 2 Wigmore, Evidence, 151, § 283.

[5] McCormick, Evidence, 543, § 252; 159, § 77.

[6] Witkin, California Evidence, 187, § 167.

(1928), 92 Cal.App. 656 [268 P. 1083]; Unif. Rule 51; 2 Wigmore, § 283; 9 Hastings L.J. 316; 170 A.L.R. 7.)''

It seems perfectly obvious that to affirm the admissibility of the evidence of subsequent changes and precautions to impeach (contradict) testimony of the character given by the witness Lammers in this case would be completely to nullify the general rule and reduce it to nothing more than an empty shell. If the present ruling were to be sustained, then the clearest dictates of logic would require a holding in the next case that the same impeaching (contradictory) type of evidence here elicited on cross-examination may properly be elicited from witnesses called in rebuttal. Such a holding would mean that whenever a defendant in this type of case calls any witness to testify to any observation tending to prove the safety of, or the lack of danger or defectiveness, in his premises at the time of an accident, the door is automatically opened to plaintiff to prove (by way of impeachment) every subsequent repair made or precaution taken. Indeed the defendant could not avoid this result merely by refraining from calling any witness for the purpose of proving the safety of his premises, because plaintiff could call his employees for cross-examination under section 2055, Code of Civil Procedure, and thereafter impeach them in the same manner.

As we have seen, the general rule is almost universally followed. We regard it as sound and salutary. We decline to nullify it by giving our sanction to any such exception as the instant case would require us to embrace. If the exclusionary rule is to be abolished, it ought to be done forthrightly rather than by the slow and painful ''whittling'' process of extending and attempting to justify illogical exceptions. We are in accord with the view expressed by McCormick in the following passage:

''As suggested above, the extrinsic policy of encouraging remedial safety measures is the predominant reason for holding evidence of such measures to be privileged. It is apparent that the free admission of such evidence for purposes other than as admissions of negligence is likely to defeat this paramount policy. It is submitted that before admitting the evidence for any of these other purposes, the court should be satisfied that the issue on which it is offered is of substantial importance and is actually, and not merely formally in dispute, that the plaintiff cannot establish the fact to be inferred conveniently by other proof, and consequently that the need

for the evidence outweighs the danger of its misuse." (McCormick, Evidence, 545, § 252.)

We have shown that respondent's position is not sustained by the decision in *Inyo Chemical Co.* v. *City of Los Angeles, supra,* 5 Cal.2d 525. There sanction was given to the impeachment of the opinion of an expert witness by proof of conduct on his part which could be construed as indicating that he entertained a different opinion at another time. Likewise, in *Hatfield* v. *Levy Brothers, supra,* 18 Cal.2d 798, it was the *act of the witness* in ordering discontinuance of the practice of waxing certain floors which was regarded as having a tendency to impeach his testimony that there was nothing wrong with the floor. Similarly, in *Daggett* v. *Atchison, T. & S. F. Ry. Co., supra,* 48 Cal.2d 655, one of the witnesses sought to be impeached was an *expert* witness who had voiced a rather extravagant opinion that the signal in place at the time of the accident "was the safest type of a signal." It was there held proper to impeach such an opinion by showing that the defendant had acceded to a request of the Public Utilities Commission in replacing a single wigwag signal with flashing light signals of a different type.

The second of the witnesses in *Daggett, supra,* was the motorman who was operating the train at the time of the accident. During the course of an intensive and comprehensive examination by plaintiff's counsel the witness was understood to testify that the railroad speed limit was 90 miles per hour *at the time of the trial.* (*Daggett, supra,* at 659-660.) Counsel for plaintiff was then permitted to question the witness and establish that in fact the speed limit *at the time of trial* had been lowered from 90 to 50 miles per hour. In Daggett, this questioning was held proper as impeachment in the form of contradiction by showing that ". . . the facts testified to by such witnesses were not the true facts . . ." (*Daggett, supra,* at 665.) In the instant case Mr. Lammers never suggested that repairs had not been made; he merely testified that he had not ordered or installed the adhesive strips, and the question asked of him by plaintiff's counsel would not show that the witnesses had testified incorrectly.

The holding in *Daggett, supra,* with respect to the latitude properly allowed in the cross-examination of an expert witness stands upon much the same footing as the holding in the more recent case of *Laird* v. *T. W. Mather, Inc.,* 51 Cal.2d 210, 219 [331 P.2d 617]. In the last cited case, defendant's expert witness volunteered the broad statement that in his opinion

the stairway in question conformed to standard engineering practice "anywhere in the world." The Supreme Court held that "The trial court did not err in permitting the plaintiff to inquire into the basis for this opinion nor to counter the effect of the witness's broad statement by attempting to show that it was not correct." Thus, it is clear that the facts involved in the Laird and Daggett cases were entirely different from those here presented.

■ Finally, we must reject respondent's argument that the form of objection made by appellant in the trial court was insufficient to preserve its right to a review of the ruling. Prior to the time when appellant's objection to the particular question was interposed, there had been a thorough discussion of the matter both in chambers and at the bench. Thus, the trial judge had been fully apprised of the respective contentions of the parties with respect to the admissibility of the evidence in question and the specific grounds of the objection.

Reversed.

Fox, P. J., and Ashburn, J., concurred.

A petition for a rehearing was denied February 2, 1959, and respondent's petition for a hearing by the Supreme Court was denied March 4, 1959.