[Civ. No. 32517. Second Dist., Div. Five. Mar. 27, 1969.]

JENNIE SANCHEZ, Plaintiff and Appellant, v. BAGUES & SONS MORTUARIES, Defendant and Respondent.

Goodman, Hirschberg & King and Max Goodman for Plaintiff and Appellant.

Parker, Stanbury, McGee, Peckham & Garrett and Thomas E. Rubbert for Defendant and Respondent.

STEPHENS, J.—This is an appeal from a judgment entered on a jury verdict in favor of the defendant in an action for personal injuries suffered by the plaintiff, who slipped and fell down two stairs on the premises of defendant. Plaintiff and her witnesses claimed that a strip of abrasive tape on the step on which she slipped was worn and slippery. Manuel Bagues, defendant's manager, testified that there was non-skid tape on the steps on the date of the accident and that the step on which plaintiff slipped was not slippery.

Plaintiff's counsel made an offer of proof that subsequent to the accident someone replaced the abrasive tape on the steps. The offered proof was to be photographs allegedly depicting such subsequent precautions. Defense counsel's objection to the attempted introduction of this evidence was sustained.

Plaintiff's counsel also attempted to introduce into evidence the deposition of a Mr. Houghton, an alleged expert witness, on the basis that the witness was unavailable to testify at the time of trial. The court sustained defense counsel's objection to the use of the deposition at trial.

This appeal presents two issues: (1) whether it was error for the trial court to exclude plaintiff's proffered evidence that the abrasive tape was replaced after the accident; (2) whether it was error for the trial court to refuse to admit into evidence the deposition of the witness who failed to appear at trial.

I

■ The general rule in regard to subsequent remedial conduct is codified in section 1151 of the Evidence Code. That section provides: "When, after the occurrence of an event, remedial or precautionary measures are taken, which, if taken previously, would have tended to make the event less likely to occur, evidence of such subsequent measures is inadmissible to prove negligence or culpable conduct in connection with the event." The reason for this rule is primarily the "very urgent policy against discouraging taking of safety measures." (McCormick, Evidence (1954) § 252.) Nevertheless, there are certain valid exceptions to the general rule. ■ An exception recognized in California is that in appropriate circumstances, evidence of subsequent precautions or repairs may properly be admitted when it tends to impeach the testi-

mony of a witness. (*Daggett* v. *Atchison, T. & S.F. Ry. Co.*, 48 Cal.2d 655, 661 [313 P.2d 557] ; *Hatfield* v. *Levy Brothers*, 18 Cal.2d 798, 809-810 [117 P.2d 841] ; *Inyo Chemical Co.* v. *City of Los Angeles*, 5 Cal.2d 525, 543-544 [55 P.2d 850].)

 Plaintiff seeks to invoke this exception, contending that the disputed evidence was proper to impeach the testimony of the witness Bagues. Plaintiff's counsel called Bagues to testify as an adverse witness under section 776 of the Evidence Code and asked him the following question: ''You don't think these steps were slippery on [the date of the accident], do you?'' The witness responded in the negative. In arguing the propriety of admitting the disputed evidence which was then sought to be introduced, plaintiff's counsel, in chambers, stated: ''. . . The only reason I asked the defendant whether or not in his opinion the condition was safe at the time of the accident is that now I can bring in the pictures to impeach his testimony.'' We are in accord with the trial court's ruling that this is not a sufficient basis on which to predicate the introduction of the proffered evidence. It is obvious that to the extent such evidence is admitted for any purpose, its admission is likely to defeat the policy of encouraging remedial measures. Therefore, the admission of such evidence should be limited to cases where the need for its admission outweighs the advantages to be gained from its exclusion. (Evid. Code, § 352.) It is apparent that counsel's trial tactic was a deliberate and calculated attempt to circumvent the exclusionary rule and the policy which prompted its establishment. Manifestly, the only real purpose counsel had in mind in seeking to introduce the disputed evidence was to induce the jury to infer negligence on the part of defendant. This does not mean that evidence of subsequent precautions can never be used to impeach a witness called to testify as an adverse witness under section 776 of the Evidence Code. Such evidence is admissible in a proper case where a sufficient foundation for its use is laid. (See *Daggett* v. *Atchison, T. & S. F. Ry. Co.*, supra, 48 Cal.2d 655 and *Pierce* v. *J. C. Penney Co.*, 167 Cal.App.2d 3 [334 P.2d 117].) In *Westbrooks* v. *Gordon H. Ball, Inc.*, 248 Cal.App.2d 209, 216 [56 Cal.Rptr. 422], the necessary foundation was explained as follows: ''The exception to the general rule above stated is this: If one in charge of installing safety measures were to testify that, in his opinion, the construction which was questioned was proper *and it should develop that he himself ordered the performance of additional safety measures, it*

would be legitimate in cross-examination to ask him whether he had not adopted new measures at variance with his statement of previous safety.'' (Italics ours.)

In the present case, there is no evidence that the witness Bagues had anything to do with installing or ordering the installation of new abrasive tape. In *Pierce* v. *J. C. Penney Co., supra,* a case factually similar to this case, the court stated: ''But, manifestly, the fact that after the accident some unidentified person *other than the witness* directed or authorized alterations affords no basis for the utilization of the method of impeachment now under consideration. The witness Lammers had absolutely nothing to do with installing or ordering the installation of the abrasive strips. There was no evidence of conduct on his part which was in the slightest degree inconsistent with any observation or belief to which he testified.'' (167 Cal.App.2d at p. 8) *Pierce* held that the evidence of later precautions should have been excluded. Similarly, there is no evidence here that the witness Bagues was in charge of installing safety measures, or that he directed or authorized anyone else to do so. Hence, the present case is distinguishable from *Inyo Chemical Co.* v. *City of Los Angeles, supra,* 5 Cal.2d 525, 543, where it was shown that the witness ''was in charge of maintenance and operation''; and distinguishable from *Hatfield* v. *Levy Brothers, supra,* 18 Cal. 2d 798, 810, where it was the act of the witness in ''having later ordered that the floor not be waxed'' that premised the admissibility of the subsequent precaution for impeachment purposes.

In conclusion, the following comment from *Pierce, supra,* is particularly apposite to the case at bar: ''It seems perfectly obvious that to affirm the admissibility of the evidence of subsequent changes and precautions to impeach (contradict) testimony of the character given by the witness Lammers in this case would be completely to nullify the general rule and reduce it to nothing more than an empty shell. If the present ruling were to be sustained, then the clearest dictates of logic would require a holding in the next case that the same impeaching (contradictory) type of evidence here elicited on cross-examination may properly be elicited from witnesses called in rebuttal. Such a holding would mean that whenever a defendant in this type of case calls any witness to testify to any observation tending to prove the safety of, or the lack of danger or defectiveness, in his premises at the time of an accident, the door is automatically opened to plaintiff to prove

(by way of impeachment) every subsequent repair made or precaution taken. Indeed the defendant could not avoid this result merely by refraining from calling any witness for the purpose of proving the safety of his premises, because plaintiff could call his employees for cross-examination under section 2055, Code of Civil Procedure,[1] and thereafter impeach them in the same manner.

"As we have seen, the general rule is almost universally followed. We regard it as sound and salutary. We decline to nullify it by giving our sanction to any such exception as the instant case would require us to embrace. If the exclusionary rule is to be abolished, it ought to be done forthrightly rather than by the slow and painful 'whittling' process of extending and attempting to justify illogical exceptions." (167 Cal. App.2d at p. 11.)

II

We next consider defendant's assignment of error relating to the trial court's refusal to admit into evidence the deposition of the witness Houghton, who failed to appear at the trial. Code of Civil Procedure section 2016, subdivision (d) (3) provides for the introduction of a deposition where the court finds ". . . that the witness is unavailable as a witness within the meaning of Section 240 of the Evidence Code. . . ." Section 240 of the Evidence Code, subdivision (a) (3) provides that a witness is unavailable if he is ". . . unable to attend or to testify at the hearing because of then existing physical or mental illness or infirmity; . . ." In an attempt to establish unavailability, plaintiff's counsel sought to convince the trial court that the witness was too infirm physically to testify. Out of the presence of the jury, counsel read into the record the witness' own statements regarding his physical condition. The trial court ruled that the witness' deposition could not be used to establish his own unavailability, since the witness' condition at the time of the deposition was not proof of his physical infirmity at time of trial. Plaintiff's counsel then decided to testify as to his own knowledge of the absent witness' condition. The trial court thereafter sustained defendant's objection to the introduction of the deposition into evidence.

The admissibility of the deposition was a matter within the discretion of the trial court, and absent an abuse

---

[1]Predecessor of section 776, Evidence Code.

thereof, the trial court's determination will not be disturbed on appeal. (*Topanga Corp.* v. *Gentile,* 249 Cal.App.2d 681, 690 [58 Cal.Rptr. 713]; *Jordan* v. *Warnke,* 205 Cal.App.2d ·621, 630 [23 Cal.Rptr. 300].) No abuse of discretion is shown in the present case. Here, the admissibility of the deposition hinged on the purported unavailability of the witness due to infirmity. Unavailability of the witness was a preliminary fact to be established to the satisfaction of the trial court by the proponent of the evidence. (Evid. Code, § 405.) There was no testimony of a doctor or nurse that the witness could not appear in court. On cross-examination, plaintiff's counsel admitted that he had not spoken with any doctors of the witness, and admitted that he knew of no medical evidence that precluded the witness from being brought to court to testify. In addition, it appears that plaintiff's counsel knew that the witness was over 80 years old and also knew that his health had been declining in recent years, having used the witness on previous occasions. In short, plaintiff's counsel arranged to take the witness' deposition, attempted to lay a foundation therein to demonstrate his unavailability to testify, and then came to trial prepared to offer into evidence the witness' deposition. The trial court was entitled to draw such inferences as it found supported by the facts, and it was encumbent upon counsel to establish the unavailability of the witness to the satisfaction of the court. The court's requirement that medical evidence be produced to establish nonavailability cannot be said to be unreasonable.

In the course of exercising its discretion concerning the admissibility of the deposition, the trial court ruled that Houghton's deposition testimony concerning his disability could not be considered at all on the question of that disability as of the time of trial, because to do so would be ''pulling yourself up by your own bootstraps.''

In affirming the discretionary result here, we do not decide whether a trial court may never attach some weight to a deponent's testimony given at the deposition concerning his physical ability to attend a trial some time in the future. Depending on the nature of the disability and the time elapsing between the deposition and the trial, the deponent's testimony may well have some bearing on the crucial question— his condition at the time of trial. (Cf. *Estate of Dolbeer,* 149 Cal. 227, 249-250 [86 P. 695]; 94 A.L.R.2d 1172.) Nor do we decide whether the deposition testimony would ever, by itself, establish inability to attend a later trial. In the case at ·bar,

however, we cannot quarrel with the soundness of the trial court's requirement that some medical testimony concerning the witness' condition at the time of trial be produced.

The judgment is affirmed.

Kaus, P. J., and Reppy, J., concurred.